927 F.2d 320
 136 L.R.R.M. (BNA) 2764, 118 Lab.Cas. P 10,640
 Michael H. MATUSZAK, et al., Plaintiffs-Appellees,
v.
The TORRINGTON COMPANY, et al., Defendants-Appellees,
v.
Margaret A. MILES, Joan Nowaczynski, Robert J. Orszulak,
David Jastrzembski, Ronald J. DeKerr and Linda S. Sanders,
Class Representatives for I.I.D. Group, Cross-Defendants and
Involuntary Plaintiffs-Appellants.
 No. 90-1026.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 8, 1990.
Decided March 12, 1991.
Rehearing and Rehearing En Banc
Denied April 22, 1991.
 
 Charles S. Leone, South Bend, Ind., for plaintiffs-appellees.
 Barry A. Macey, Richard J. Swanson, Segal and Macey, Indianapolis, Ind., Douglas D. Small, Franklin A. Morse, II, Roger Benko, Barnes & Thornburg, South Bend, Ind., for defendants-appellees.
 R. Wyatt Mick, Jr., Bingham, Loughlin, Mick & Bent, Mishawaka, Ind., Thomas R. Fette, Charles H. Mostov, Fette, Dumke & Passaro, St. Joseph, Mich., Franklin A. Morse, II, South Bend, Ind., for cross-defendants and involuntary plaintiffs-appellants.
 Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 This appeal concerns when laid off employees of Torrington Company ("Torrington" or "Company") receive seniority credit for the period of their layoff under their collective bargaining agreement ("CBA"). Jurisdiction is based upon statutory interpleader (28 U.S.C. Sec. 1335), Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. Sec. 185), and Section 502 of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. Sec. 1132). The Appellants are a class of fifty-one employees (the "Class") who are a part of a larger group that had been laid off prior to a plant closing. If the Class members earned seniority day-by-day during their layoff, each of them had sufficient seniority to be entitled to plant closure benefits. None of the Class members had enough seniority to receive these benefits, however, if they were entitled to seniority for the period of their layoff only when (and if) recalled to work. The Appellees include Torrington and the members of the Board of Administration ("Board") that denied plant closure benefits to the Class. The District Court granted summary judgment for the Appellees, concluding that the Class members are not entitled to plant closure benefits. We reverse and remand for further proceedings because we conclude the Class members' seniority as defined in the CBA includes the time spent on their final layoff.
 
 Factual Background
 
 2
 In 1966, Torrington entered into a CBA with the International Union of the United Automobile, Aero-Space, and Agricultural Implement Workers of America ("UAW") and its Local Union Number 590 in South Bend, Indiana ("Local"). The Local had been concerned about the impact of a possible plant closure upon the most senior Torrington employees. And so, the 1966 CBA required Torrington to establish a Supplemental Unemployment Benefit Fund ("Fund") that would pay benefits to eligible employees in the event Torrington would close or relocate its South Bend plant.
 
 
 3
 In 1981, Torrington, the UAW and the Local entered into the CBA now at issue. The 1981 CBA specifies that an employee "must have at least ten (10) years of continuous Company service" to be eligible for plant closing benefits from the Fund. Article XV, Section 2. All parties agree that "continuous Company service" means "seniority" as defined in the 1981 CBA. As required by the CBA, Torrington, the UAW and the Local together approved a written plan for the administration of the Fund, as amended May 1, 1981 ("Fund document" or "Plan document"). Because the Fund is maintained by Torrington for the purpose of providing unemployment benefits to the employees, it is an "employee welfare benefit fund" and thus subject to ERISA. See 29 U.S.C. Secs. 1002-1003.
 
 
 4
 The Fund document contains eligibility language identical to that of the 1981 CBA. The Fund document also establishes procedures for applying for benefits. An employee must first file an application with the Company. If the application is denied, the employee may then appeal to the Board. The Board's decision is final and binding upon all parties. Although the Board is forbidden to waive, alter, or qualify the eligibility requirements, the Board does possess the authority to make necessary interpretations of the Fund document. See Fund document, Article X.
 
 
 5
 On October 13, 1983, Torrington announced it was closing its South Bend plant and relocating outside Indiana. The Board then announced that to be eligible for plant closing benefits, an employee must have been actively working at Torrington on the date of the plant closure announcement. The Board abandoned that position during the litigation before the District Court,[1] and now accepts that employees who were on layoff on the date of the plant closure announcement may be eligible for benefits, but only if they had ten years seniority prior to their last layoff. According to the Board, employees earn seniority while laid off, but they receive this seniority only upon being called back to work. In the present case, the plant closed, so none of the laid off workers were called back--and so none, according to the Board, ever received seniority credit for the layoff period. The Class members, needing credit for the final layoff period to be eligible for benefits, urge that seniority accrues day-by-day from the date of hire, and so they received seniority for the final layoff whether they were recalled or not.
 
 Standard of Review
 
 6
 This Court reviews the District Court's grant of summary judgment de novo. See, e.g., La Preferida, Inc. v. Cerveceria Modelo, S.A., 914 F.2d 900, 905 (7th Cir.1990). A further question is the degree of deference, if any, we owe to the Board's interpretation of when laid off employees receive seniority under the Plan. The Supreme Court has held "that a denial of [ERISA] benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).[2] In the present case, then, the standard of review of the Board's interpretation is de novo unless the Plan provides otherwise.
 
 
 7
 This conclusion requires de novo review of the Board's decision because no plan can provide discretion to deny benefits for reasons identified only years after the fact.[3] ERISA requires that "every employee benefit plan shall provide adequate notice in writing to any participant ... whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. Sec. 1133; see also 29 C.F.R. Sec. 2560.503-1(e), (f) (specifying a 90 day period for the plan to provide notice containing the reasons for a denial of benefits). This requirement that the board disclose the basis for its decision is necessary so that plan beneficiaries "can adequately prepare ... for any further administrative review, as well as an appeal to the federal courts." Richardson v. Central States Southeast and Southwest Areas Pension Fund, 645 F.2d 660, 665 (8th Cir.1981). This Court would emasculate ERISA's disclosure requirement if it were to defer to reasons that the Board first identified on appeal in the District Court, years after the decision at issue. No plan can authorize such a result, so Firestone requires that we review the Board's decision de novo.[4]
 
 Determination of Seniority Under the CBA
 
 8
 The question we must answer is when does an employee who has been laid off receive seniority for the time of the layoff.[5] Again, the Class argues that seniority accrues continuously during the time of the layoff. The Appellees contend that an employee will receive seniority credit for time spent on layoff only if and when the employee is recalled. The Class members need credit for their layoff time to attain ten years seniority and so to establish eligibility for plant closure benefits.
 
 
 9
 The place to begin is the CBA. Article VI of the CBA provides:
 
 
 10
 Section 1. All new employees shall be considered temporary employees for the first three (3) months. After this probationary period, they shall be placed upon the seniority list dated from the original date of hire. Layoff or discharge of temporary workers is entirely at the Company's option, but if considered discriminatory, may be taken up as a grievance.
 
 
 11
 ....
 
 
 12
 Section 3. Seniority may be lost for the following reasons only: ....
 
 
 13
 (e) Absence from work for twenty-four (24) months by an employee with less than two (2) years seniority. One (1) month additional time will be allowed for each year of service after two (2) years.
 
 
 14
 (emphasis added).
 
 
 15
 We believe the language of the CBA unambiguously rejects the position advocated by the prevailing parties below. Seniority accrues "from the original date of hire." Seniority is lost because of a layoff only if the layoff lasts at least twenty-four months. No other provision in the CBA authorizes the tolling of seniority accrual during layoff. The CBA is clear: The Class members may include the time spent during their final layoff in their seniority, notwithstanding the fact they were never recalled.
 
 
 16
 But the Appellees contend this unambiguous language must be read in context with the course of dealing at Torrington. Four affidavits, including two from members of the nine-person Local bargaining team that negotiated the 1981 CBA, are offered stating in virtually identical language:
 
 
 17
 [T]he collective bargaining agreement was consistently interpreted by the Company and the Union to provide that an individual recalled from an economic layoff before his or her seniority was broken would accrue seniority during the time of his or her layoff. Thus, an individual who was laid off with eight (8) years of seniority and was recalled after being a layoff for a period of two (2) years and five (5) months, would have ten (10) years and five (5) months seniority at the time of his recall. However no seniority would be accrued until and unless the individual was recalled from layoff. Thus, an individual who had eight (8) years of seniority at the time of his layoff and who was never recalled would continue to have only eight (8) years of seniority until his layoff extended longer than two (2) years and six (6) months, at which time his seniority would be broken and he would cease to be a member of the bargaining unit.
 
 
 18
 Affidavit of Irving Vinson, p 6 (emphasis in original); Affidavit of Casimir Wisiewski, p 10; Affidavit of Arthur Birk, p 11; Affidavit of Michael H. Matuszak, p 6. No affidavits have been offered to controvert the assertion that Torrington in fact credited seniority for time spent on layoff upon recall.
 
 
 19
 The Appellees argue that the CBA must be interpreted only in the context of this Company practice. They contend this method of seniority tolling during time of layoff constitutes a course of dealing. Quite correctly, the Appellees point out that the parties to a CBA may tacitly acquiesce to an amendment of the agreement through their course of dealing. See Railway Labor Executives Ass'n v. Norfolk & Western Ry. Co., 833 F.2d 700, 705 (7th Cir.1987); Brotherhood Ry. Carmen v. Norfolk & Western Ry. Co., 745 F.2d 370, 377 (6th Cir.1984).
 
 
 20
 But we are not persuaded a course of dealing has been established that can help us decide this case. The affidavits indicate a method for calculating seniority accrual during layoff that breaches the express language of the CBA. However, the affidavits do not tell us how this continuous breach ever made a difference in the eyes of the workers. During normal layoffs, a worker would either be recalled and thus get credit for time spent on layoff, or he would not be recalled and thus lose all his seniority. The affidavits offer no example of an actual case when a worker was denied collectively bargained benefits based upon the timing of seniority accrual during layoff. The record indicates no case in which a worker would have been obliged to file a grievance because of Torrington's practice. And so it appears that any course of dealing established by Torrington's seniority accrual practice only has application in cases where that practice makes no difference of consequence. We cannot allow a meaningless Company practice to thwart the express language of a CBA the first time that practice might cause an employee to complain.
 
 
 21
 Seniority is to be determined according to the precise language of the CBA and is to be accrued continuously from the date of hire. We therefore REVERSE the grant of summary judgment against the Class and REMAND to the District Court for further proceedings to determine who is entitled to benefits given the interpretation of "seniority" we have articulated in this opinion. Circuit Rule 36 shall not apply.
 
 
 
 [1]
 The reason originally given for the Board's denial of benefits to the Class is that "at the time those employees were laid off, Torrington had not announced a decision to close the plant." Memorandum and Order Granting Class Certification, at 5. Nearly four years after the initial denial of benefits, the affidavits of Board members Arthur Birk and Charles McNerney offer as an alternative reason that the Class members do not possess sufficient seniority as defined in the CBA to be eligible for Fund distributions. Since the Board discarded the original reason in the District Court, the Board has relied exclusively on the new reason articulated by members Birk and McNerney to justify its decision to deny benefits. The original reason has not been offered before us as support for the Board decision
 
 
 [2]
 There is a troubling question whether the Board possesses discretionary authority to interpret ambiguous terms in this case. Although the Plan document provides the Board the jurisdiction to make necessary interpretations, the document specifically forbids the Board "to determine any questions arising under the Collective Bargaining Agreement even though relevant to the issues before the Board." Plan document, Article X, Section 5(e). Because the benefits decision depends upon the interpretation of "seniority" as defined in the CBA, it is arguable that the Board's discretion to interpret the Plan document stops short of the Board's interpretation in this case. Compare Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir.1990) (explaining why the authority to interpret the plan can be sufficient discretion to trigger Firestone's abuse of discretion review even though the fiduciary is denied the authority to modify or add to the terms of the plan). For a discussion of the Board's authority to decide issues that depend upon interpretation of the CBA, see generally Torrington Co. v. Local Union 590, 803 F.2d 927, 931-32 (7th Cir.1986)
 
 
 [3]
 As noted in the fact section above, during the litigation before the District Court, the Board abandoned its original reason for the denial of benefits (that the Class members had not been actively working on the date of the plant closure announcement) and began arguing for the first time that the Class members do not possess sufficient seniority. See supra note 1. Although the parties did not address this abandonment as an issue before us, we nevertheless conclude this fact is highly relevant to our Firestone analysis
 
 
 [4]
 This conclusion is analogous to a well established principle of administrative law. " '[W]e cannot accept appellate counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.' " Federal Power Comm'n v. Texaco, Inc., 417 U.S. 380, 396, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167-68, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). "If the basis stated by the agency for its decision is insufficient, we may not supply another that the agency itself has not chosen to rely on." American Meat Inst. v. Environmental Protection Agency, 526 F.2d 442, 453 (7th Cir.1975)
 
 
 [5]
 This question confronts us with the task of interpreting a CBA. Federal law will govern our interpretation. Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)