REVISED, August 12, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10491
_____


ANITA SCHADLER,

                              Plaintiff-Appellant,

        v.

ANTHEM LIFE INSURANCE COMPANY; ANTHEM BENEFIT SERVICES INC;
ACORDIA BENEFITS OF THE SOUTH, INC; ALLIED SIGNAL, INC;
ALLIED SIGNAL TECHNICAL SERVICES CORPORATION; ALLIED SIGNAL
TEAM/WHITE SANDS,

                              Defendants-Appellees.

_____

            Appeal from the United States District Court
                 for the Northern District of Texas
_____
                         July 17, 1998

Before KING and BARKSDALE, Circuit Judges, and DUPLANTIER,[*]
District Judge.

KING, Circuit Judge:

        In this case under the Employee Retirement Income Security

Act, plaintiff-appellant Anita Schadler appeals the district

court's determination that she is ineligible to receive benefits

under her husband's accidental death and dismemberment policy

based upon an exclusion asserted by defendants-appellees for the

first time on appeal to the district court.  Because we conclude

that the plan administrator failed to make the initial benefits

_____

        [*]     District Judge of the Eastern District of Louisiana,
sitting by designation.

determination as required by the plan, we vacate the judgment of the district court and remand with instructions to remand to the plan administrator to make the necessary benefits decision in the first instance.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Prior to May 1994, James T. Schadler (Mr. Schadler), the late husband of plaintiff-appellant Anita Schadler (Mrs. Schadler), worked as an engineer for Lockheed Corporation (Lockheed) at the White Sands Test Facility in New Mexico.  In May 1994, defendant-appellee Allied Signal Team/White Sands (Allied) replaced Lockheed as the contractor operating the White Sands facility, and Mr. Schadler thereby became an employee of Allied on May 3, 1994.

As part of his employment, Allied offered Mr. Schadler a package of employee benefits (the Plan).  One option included in the Plan was a voluntary accidental death and dismemberment policy (the VAD&D Policy).  Defendant-appellee Anthem Insurance Company (Anthem) underwrote and administered the VAD&D Policy and defendant-appellee Acordia Benefits of the South, Inc. (Acordia) served as its third-party administrator.  The VAD&D Policy provided that Mr. Schadler could enroll upon submitting the appropriate paperwork and agreeing to make certain premium payments.

On May 12, 1994, Mr. Schadler died as a result of a mixed-drug intoxication.  His autopsy revealed a recent needle puncture that was not associated with resuscitative efforts, and a

2

toxicologic examination of his body fluids revealed "cocaine, Desipramine, and markedly elevated levels of morphine." Mr. Schadler had a history of drug abuse.

Following Mr. Schadler's death, Mrs. Schadler sought payment under various policies included in the Plan, including the VAD&D Policy. In a letter dated April 24, 1995, Anthem explained that Mrs. Schadler was not entitled to recover under the VAD&D Policy because it had never received an enrollment card from Mr. Schadler and had not billed him for coverage under the VAD&D Policy. Anthem therefore concluded that "no VAD&D policy was ever issued to James L. Schadler."[1]

Following Anthem's determination that Mr. Schadler was not covered by the VAD&D Policy, Mrs. Schadler timely filed this action against defendants-appellees Anthem, Anthem Benefit Services, Inc., Acordia, Allied, Allied Signal, Inc., and Allied Signal Technical Services Corporation (collectively, Defendants) pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.[2] She contended in her complaint

[1] Anthem also stated in the letter that Mrs. Schadler was not entitled to recover under an optional life insurance policy (the OLI Policy) or under a separate accidental death and dismemberment policy that was funded by Mr. Schadler's employer (the AD&D Policy). Anthem denied coverage on the OLI Policy because "no Anthem Voluntary Life insurance product was offered" to Mr. Schadler. It denied payment on the AD&D policy on the basis of a provision excluding recovery for deaths resulting from "the taking of drugs or poisons . . . when done on a voluntary basis" unless those drugs "are taken on the advice of a physician."

[2] In her complaint, Mrs. Schadler also challenged the denial of benefits under the OLI Policy and under the AD&D Policy. The parties settled the dispute over the AD&D Policy

3

that Mr. Schadler had completed and returned the VAD&D Policy's enrollment card, and she argued that Anthem's failure to receive the enrollment card was due to an "inadvertent error, omission or failure" on the part of Allied, for which the Plan indicated that an employee may not be deprived of coverage.

On March 6, 1996, Defendants moved for summary judgment, arguing that "no application or premium was ever received and no coverage was ever in force for a VAD&D policy." In the alternative, Defendants argued for the first time that, even if the VAD&D Policy had been in force, recovery was precluded by several exclusions contained therein, which they described as follows:[3]

> - Intentionally self-inflicted injuries, or any attempt thereof, while sane or insane.

> - The taking of drugs or poisons or asphyxiation from the inhaling of gas, when done on a voluntary basis. (This does not apply to drugs that are taken on the advice of a physician).

For reasons that remain unclear, in Defendants' Supplemental Motion for Summary Judgment they began to abandon their original lack of coverage defense, stating that, "[r]egardless of whether

---

before trial. In her brief on appeal, Mrs. Schadler does not contest the denial of coverage under the OLI Policy, and we therefore do not address that claim here. See Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987).

[3] Defendants' also contended that Mrs. Schadler was not entitled to recover based on an exclusion for death or dismemberment resulting from "committing or attempting to commit an assault or felony." However, they no longer assert this exclusion as a basis for their denial of Mrs. Schadler's claim under the VAD&D Policy, and we therefore need not address it. See Brinkmann, 813 F.2d at 748.

4

James Schadler properly enrolled for the benefits in dispute, it is undisputed that the summary and plan at issue included language specifically excluding benefits for intentionally self-inflicted injury." Moreover, Defendants' Proposed Findings of Fact and Conclusions of Law did not mention the lack of coverage defense, stating only that Mr. Schadler's death was excluded from coverage based on the intentionally self-inflicted injury and drug-use exclusions. In response, Mrs. Schadler argued that Defendants could not rely on the drug-use exclusion because it was not listed in the Summary Plan Description (SPD). She also contended that Defendants should not be allowed to rely on the intentionally self-inflicted injury exclusion because they did not assert it until they moved for summary judgment in the district court.

The district court denied Defendants' motion for summary judgment. Following a bench trial consisting of the admission of depositions, affidavits, and other exhibits and of closing arguments by counsel, the district court determined that circuit precedent dictated that Defendants could not deny Mrs. Schadler benefits based upon the drug-use exclusion because it was not listed in the SPD. The court nevertheless found that she was ineligible to receive benefits under the VAD&D Policy because Mr. Schadler's death was the result of illicit drug use, which the court found constituted an intentionally self-inflicted injury and was therefore excluded from coverage. Mrs. Schadler timely appealed the judgment of the district court.

5

## II.  DISCUSSION

Mrs. Schadler argues that the district court erred in finding that she was not entitled to benefits.  She first contends that ERISA and the regulations promulgated pursuant to it dictate that Defendants should not have been allowed to assert the intentionally self-inflicted injury exclusion for the first time before the district court.  Alternatively, Mrs. Schadler asserts that even if Defendants are allowed to rely on the intentionally self-inflicted injury exclusion, it does not preclude her recovery because Mr. Schadler did not intend to injure himself.

Defendants respond that they have asserted the same factual basis for denying the claim throughout the process and that Mrs. Schadler therefore was not prejudiced by their reliance on the intentionally self-inflicted injury exclusion for the first time before the district court.  In addition, they argue that the district court's decision that the intentionally self-inflicted injury exclusion precluded recovery is correct.[4]  Following a

---

[4]  Alternatively, Defendants argue that the district court incorrectly determined that they were foreclosed from relying on the drug-use exclusion.  In Hansen v. Continental Insurance Co., 940 F.2d 971 (5th Cir. 1991), we held that where the SPD and the terms of the plan conflict, the SPD controls.  Id. at 982. However, we reserved for another day the issue of whether an ERISA claimant must show reliance on the terms of the SPD in order to benefit from the terms within it that conflict with the plan.  Id. at 983.  Defendants now assert that this court should follow the majority of other circuits and hold that in order for the SPD to control when in conflict with terms contained within the plan, the plaintiff must prove that she relied on the SPD. However, Defendants failed to include this issue in the parties' Joint Pre-Trial Order, and they now raise it for the first time on appeal.  "'Once the [pretrial] order is entered, it controls

brief discussion of the law surrounding suits challenging denials of benefits under ERISA, we address each of these arguments in turn.

**A.**

As the Supreme Court has explained, "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (citations omitted) (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983) and Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985), respectively). Therefore,

> ERISA sets certain minimum requirements for procedures and notification when a plan administrator denies a claim for benefits. In a nutshell, ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for "full and fair review" by the administrator.

Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688 (7th Cir. 1992).

These procedures are set forth in § 1133 of ERISA and in the Department of Labor regulations promulgated pursuant to that section. Section 1133 provides:

---

the scope and course of the trial. Fed. R. Civ. P. 16. If a claim or issue is omitted from the order, it is waived.'" Valley Ranch Dev. Co. v. FDIC, 960 F.2d 550, 554 (5th Cir. 1992) (alteration in original) (quoting Flannery v. Carroll, 676 F.2d 126, 129 (5th Cir. 1982)). Moreover, the fact that the district court mentioned reliance in a footnote is not sufficient to permit Defendants to argue it before this court because the record reveals that it was not litigated below. Accordingly, we conclude that Defendants have failed to preserve any challenge to the district court's determination that they are precluded from relying on the drug-use exclusion to deny benefits in this case.

In accordance with regulations of the Secretary, every employee benefit plan shall--
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The Department of Labor Regulations further elaborate on § 1133(1)'s notice requirement. Section 2560.503-1(f) of Title 29 of the Code of Federal Regulations provides as follows:

(f) <u>Content of notice.</u> A plan administrator or, if paragraph (c) of this section is applicable, the insurance company, insurance service, or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
(1) The specific reason or reasons for the denial;
(2) Specific reference to pertinent plan provisions on which the denial is based;
(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f).

Because ERISA and the regulations promulgated pursuant to it "'were intended to help claimants process their claims efficiently and fairly,'" <u>Short v. Central States, Southeast & Southwest Areas Pension Fund</u>, 729 F.2d 567, 575 (8th Cir. 1984) (quoting <u>Richardson v. Central States, Southeast & Southwest</u>

8

Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981)), the "requirement that the [administrator] disclose the basis for its decision is necessary so that plan beneficiaries 'can adequately prepare . . . for any further administrative review, as well as an appeal to the federal courts,'" Matuszak v. Torrington Co., 927 F.2d 320, 323 (7th Cir. 1991) (alteration in original) (quoting Richardson, 645 F.2d at 665). See also Halpin, 962 F.2d at 689 ("[T]hese regulations are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial."). Courts therefore have held that ERISA and its regulations require that, when a plan administrator denies a claim, it must "'issue a written opinion that includes specific reasons for the decision. Baldfaced conclusions do not satisfy this requirement.'" Short, 729 F.2d at 575 (quoting Richardson, 645 F.2d at 665).

In determining whether to pay or deny benefits, a plan administrator must make two general types of determinations: "First, he must determine the facts underlying the claim for benefits. . . . Second, he must then determine whether those facts constitute a claim to be honored under the terms of the plan." Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1557 (5th Cir. 1991). The requirement that the administrator must give reasons for its benefits decision applies to these two types of determinations.

When a plan has denied benefits to a claimant, § 1132 of ERISA provides that the claimant may bring a suit in federal

9

district court "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(b).  In <u>Firestone Tire & Rubber Co. v. Bruch</u>, the Supreme Court delineated the appropriate standards of review of the plan administrator's second decision-- i.e., its interpretation of the provisions of the plan.  489 U.S. 101, 108 (1989).  Relying on principles of trust law, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  <u>Id.</u> at 115; <u>see also</u> <u>Sweatman v. Commercial Union Ins. Co.</u>, 39 F.3d 594, 597-98 (5th Cir. 1994); <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631, 636 (5th Cir.), <u>modified on other grounds</u>, 979 F.2d 1013 (5th Cir. 1992).  Where a plan does vest the administrator with such discretionary authority, courts review the decision under the more deferential abuse of discretion standard.[5]  <u>Barhan v. Ry-Ron, Inc.</u>, 121 F.3d 198, 201

---

[5]      Where the court must apply the abuse of discretion standard to the administrator's interpretation of the plan, we have delineated a two-step inquiry for determining whether the administrator's decision will be affirmed.

> The court must initially determine whether the administrator's interpretation of the plan is the legally correct interpretation.  If the administrator's interpretation of the plan is legally correct, then the inquiry ends because no abuse of discretion could have occurred.  However, if the court determines that the administrator's determination is not legally correct, then it must further determine whether the administrator's decision was an abuse of discretion.

<u>Spacek v. Maritime Ass'n, ILA Pension Plan</u>, 134 F.3d 283, 292-93 (5th Cir. 1998) (citation omitted) (citing <u>Wildbur</u>, 974 F.2d at

10

(5th Cir. 1997); Wildbur, 974 F.2d at 636. Finally, even when the district court's review of the administrator's interpretation of the provisions of the plan is limited by the use of a deferential standard, we have held that the district court "is not confined to the administrative record in determining whether, under our analytical framework, [the] plan administrator abused his discretion in making a benefit determination."[6] Wildbur, 974 F.2d at 639.

Bruch addressed only the second determination made by the administrator, leaving open the question of what standard of review should be applied to an administrator's factual determinations. See Bruch, 489 U.S. at 108 (noting that its discussion was "limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations" (emphasis added)); Pierre, 932 F.2d at 1557 ("Bruch addressed the proper standard of review that is to be given to the plan administrator's second determination. Bruch did not speak to the first."). As to the first determination-- the findings of fact--we have held that the administrator's decision should always be reviewed for an abuse of discretion. Pierre, 932 F.2d at 1562; see also Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 101 (5th Cir. 1993). Moreover, the

637).

[6]    Other evidence that may be relevant to this determination includes, for example, evidence indicating whether the administrator's interpretations of plan provisions have been consistent. See Wildbur, 974 F.2d at 639 n.15.

reviewing court "should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator." Wildbur, 974 F.2d at 639; see also Southern Farm Bureau, 993 F.2d at 102.

In sum, ERISA and its regulations contemplate a system in which the administrator makes a decision as to whether to grant or deny benefits based on the factual scenario and based on its interpretation of the relevant plan provisions. The administrator then provides the claimant with notice of the decision, including, among other things, the "specific reason or reasons for the denial" and "[s]pecific reference to pertinent plan provisions on which the denial is based." 29 C.F.R. § 2560.503-1(f). If the administrator denies benefits, the claimant may bring suit under § 1132. The district court will then engage in a deferential review of the administrator's factual determinations, based on the record before the administrator. Next, depending on whether the plan expressly grants the administrator discretion in interpreting its terms, the reviewing court will review the administrator's interpretation of the plan provisions either under a de novo or an abuse of discretion standard. Thus, the end product of a claims review process wherein § 1133 and its regulations have been followed faithfully is a benefits decision that is thoroughly informed by the relevant facts and the terms of the

12

plan and, if benefits are denied, includes an explanation of the denial that is adequate to insure meaningful review of that denial. Having laid out the proper procedures to be followed, we now turn to an examination of how this process functioned in the instant case.

## B.

The Plan at issue in this case vests the administrator with the discretion to interpret its terms.[7] The administrator determined that Mrs. Schadler was not entitled to recover because the VAD&D Policy had never gone into effect and therefore had never provided coverage for Mr. Schadler. Mrs. Schadler then filed suit pursuant to § 1132, contending that the terms of the Plan indicated that a beneficiary would not be penalized for his employer's failure to submit his enrollment documents properly. Defendants moved for summary judgment, and they asserted for the first time that even if the VAD&D Policy had been in effect as to Mr. Schadler, coverage was precluded based on several exclusions

---

[7] The Plan states: "Anthem Life Insurance Company reserves the right to determine eligibility and construe the terms of the Plan." Although it does not include the term "discretion," this statement is adequate to vest the administrator with the discretion to interpret the terms of the Plan. See Wildbur, 974 F.2d at 637 (noting that the focus in determining whether administrators have been granted discretion to interpret the terms of the plan should be on "the breadth of the administrators' power--their 'authority to determine eligibility for benefits or to construe the terms of the plan'" and not on an "incantation of the word 'discretion' or any other 'magic word'" (quoting Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1453 (D.C. Cir. 1992))).

13

contained in the VAD&D Policy, including one relating to intentionally self-inflicted injury.[8]

Mrs. Schadler now argues that Defendants should be barred from raising the intentionally self-inflicted injury exclusion for the first time in the district court. Defendants respond that the judgment of the district court should be affirmed because they have relied on the same "factual basis" for their denial of benefits throughout the process. For the reasons that follow, we conclude that the case must be remanded to the administrator so that it may exercise its discretion and determine whether, under the circumstances of this case, the intentionally self-inflicted injury exclusion prevents Mrs. Schadler from recovering under the VAD&D Policy.

Mrs. Schadler argues that Defendants should not have been allowed to assert the intentionally self-inflicted injury exclusion for the first time before the district court because ERISA and the regulations promulgated pursuant to it mandate that when an employee benefit plan provides a claimant with notice that her claim has been denied, it must specifically reference the plan provision upon which the administrator relied in making the decision to deny benefits. Mrs. Schadler contends that because Defendants failed to specifically reference the intentionally self-inflicted injury exclusion in their denial

_____

[8] The Plan's intentionally self-inflicted injury exclusion states: "No benefits will be paid for losses caused or contributed to by: . . . (5) suicide, attempted suicide, or intentionally self-inflicted injury, while sane or insane."

14

letter, they have waived that exclusion and should have been barred from raising it on appeal to the district court.[9]

We agree with Mrs. Schadler that, once the interpretation of plan provisions becomes an issue, both the administrator and the claimant should (1) adduce, at the earliest possible point in the process, all possible reasons bearing on the granting or denial of benefits under the plan and (2) develop the necessary factual record so that those issues may be addressed and decided. Doing so will ultimately further ERISA's purpose of streamlining and shortening the timeframe for disposing of claims. However, whatever may be the case in other circumstances, we do not think that a finding that Defendants have waived the intentionally

_____

[9] Relying on <u>Hansen v. Western Greyhound Retirement Plan</u>, 859 F.2d 779 (9th Cir. 1988), Defendants respond, and the district court held, that no principle of estoppel precludes them from changing the basis for their denial of benefits. <u>Id.</u> at 781 n.1. In <u>Hansen</u>, the Ninth Circuit held that "an employee benefit fund may not be required by estoppel to make payments not authorized by a written plan." <u>Id.</u> at 781. In a footnote, the court also noted that "[e]ven if Trust officials offered varying explanations [for their denial of the plaintiff's claim], their confusion could not estop enforcement of the written plan provisions." <u>Id.</u> at 781 n.1. <u>Hansen</u> is inapposite to the case at bar.

<u>Hansen</u> involved a claim for retirement benefits by a plaintiff who, according to the written terms of the plan, was ineligible to receive the benefits he sought. <u>Id.</u> at 781. The <u>Hansen</u> claimant based his claim for equitable estoppel on his reliance on a misrepresentation made to him by a plan official regarding his eligibility. <u>Id.</u> In contrast, no one now disputes that Mr. Schadler was eligible to receive benefits under the terms of the Plan. Moreover, Mrs. Schadler advances no claim that the Plan misled her husband as to his coverage, and, as she points out, she is not asking the court to estop Defendants from asserting the exclusion for equitable reasons. Rather, she contends that because the Plan failed to assert the intentionally self-inflicted injury exclusion in the first instance as a reason for its denial of her claim, it has now waived that exclusion.

15

self-inflicted injury exclusion is warranted in the instant case. This is not a situation in which the administrator asserted one plan exclusion at the administrative level and trial counsel then bolstered the administrator's position before the district court with other exclusions. Indeed, in denying the claim in the first instance, the administrator advanced a non-frivolous argument that the VAD&D Policy had never been in effect as to Mr. Schadler. The administrator therefore was not called upon to make any further benefits determinations or even to interpret the terms of the Plan at all in concluding that Mr. Schadler was not covered. See Vizcaino v. Microsoft Corp., 120 F.3d 1006, 1013 (9th Cir. 1997) (en banc) (remanding the case to the plan administrator which had not interpreted the provision at issue in the first instance because it had found for the defendants on alternative grounds), cert. denied, 118 S. Ct. 899 (1998); id. at 1022 n.4 (O'Scannlain, J., concurring in part and dissenting in part) ("[T]he Plan Administrator had no need to reach the question of the meaning of [the plan provision at issue on appeal] since it had already determined that the [plaintiffs] were not entitled to benefits on several other grounds. I am not persuaded that by failing to interpret expressly a provision in the Plan the Administrator rendered the provision a nullity."). As a result, we are unwilling to conclude that the administrator has, by determining that Mr. Schadler was not covered by the VAD&D Policy, waived the right to interpret any particular

16

provisions of the VAD&D Policy once it has been shown that Mr. Schadler was in fact covered.

Defendants respond to Mrs. Schadler's waiver argument by contending that she has suffered no prejudice as a result of their assertion of the intentionally self-inflicted injury exclusion for the first time before the district court because they have at all times claimed that the basis for their denial of coverage is the fact that Mr. Schadler died as a result of a voluntary, self-administered drug overdose. They therefore argue that the district court's judgment should be affirmed. We disagree.

First, although from the beginning Defendants claimed that Mr. Schadler was not entitled to coverage under the AD&D Policy (as distinguished from the VAD&D Policy at issue here) based on the fact that he died as a result of a voluntary drug overdose, they did not assert this with respect to the VAD&D Policy until their motion for summary judgment. Prior to that point in the claims process and the ensuing litigation, Defendants' defense to Mrs. Schadler's claim under the VAD&D Policy was based entirely on their argument that Mr. Schadler never effectively enrolled in the VAD&D Policy and therefore was not entitled to coverage. Therefore, Defendants' claim that they have always asserted the same "factual basis" in denying this claim is simply not true. Second, even if Defendants had stated from the beginning that their denial of coverage was based on the fact that Mr. Schadler died from a voluntary drug overdose, that would not have

17

satisfied § 2560.503-1(f) which mandates that, in addition to providing the factual reasons for the denial, the notice to the claimant must also contain "[s]pecific reference to pertinent plan provisions on which the denial is based."  29 C.F.R. § 2560.503-1(f)(2).[10]

As we find that neither Mrs. Schadler's nor Defendants' arguments are compelling in the instant situation, we turn to our own analysis of what the law requires in this case.  ERISA and Bruch indicate that the job of the district court is to review the administrator's fact-finding and its interpretation of an employee benefit plan's provisions.  See Bruch, 489 U.S. at 111. Indeed, the Supreme Court has instructed us that, when an

---

[10]    We note also that in many cases the factual development that takes place at the administrative level will differ depending on the plan provisions upon which the administrator relies to deny benefits.  In the case at bar, for example, the no-coverage defense, the drug-use exclusion, and the intentionally self-inflicted injury exclusion each requires the development of different factual issues.

In order to address the application of the intentionally self-inflicted injury exclusion to Mrs. Schadler's claim, the administrator must consider facts bearing upon (1) Mr. Schadler's state of mind and intent and (2) his subjective expectations in taking the particular drugs at issue here.  In addition, the administrator must "ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."  Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990); see also, Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456, 464-65 (7th Cir. 1997) (adopting the Wickman test); Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1456 (5th Cir. 1995) (same).  As is evident from this discussion, due to the specificity of the factual inquiry demanded by each plan provision, it is imperative that a claimant know at the administrative level which plan provisions have been relied upon in denying the claim and be given a full opportunity at that level to adduce all relevant evidence.

18

employee benefit plan vests discretion in the administrator, principles of trust law require that we leave the plan administrator's interpretation undisturbed if reasonable. See id. In this case, however, the administrator never had occasion to interpret the intentionally self-inflicted injury exclusion upon which Defendants now rely to deny coverage because it concluded at the outset that the VAD&D Policy never covered Mr. Schadler.

Although we have not previously addressed an ERISA case presenting a similar situation, several other courts have done so and have unanimously concluded that a post hoc rationalization for a decision to deny benefits is not equivalent to an administrator's exercise of its discretion. See, e.g., Vizcaino, 120 F.3d at 1013-15 (remanding a case for a decision by the administrator where, for the first time at trial, the defendants asserted an interpretation of a plan provision that had not been considered in the administrator's decision to deny benefits); Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir. 1996) ("If the justification that the plan administrator offers in court is inconsistent with the reason that he gave the applicant, the justification will be undermined."), cert. denied, 117 S. Ct. 2532 (1997); Matuszak v. Torrington Co., 927 F.2d 320, 323 (7th Cir. 1990) ("This Court would emasculate ERISA's disclosure requirement if it were to defer to reasons that the Board first identified on appeal in the District Court, years after the decision at issue. No plan can authorize such a result . . .

19

."); <u>Adelson v. GTE Corp.</u>, 790 F. Supp. 1265, 1273 (D. Md. 1992) (refusing to apply a deferential standard of review to a rationale for denying benefits that was not advanced by the administrator and was only brought forth later by attorneys for the plan on review by the district court). These courts reason that "<u>no</u> plan can provide discretion to deny benefits for reasons identified only years after the fact." <u>Matuszak</u>, 927 F.2d at 322.

The district court, recognizing that the administrator did not rely on the intentionally self-inflicted injury exclusion in deciding to deny benefits, determined that it should therefore apply a de novo standard of review and, in effect, made the benefits decision itself. "Whether the district court employed the correct standard of review to an administrator's eligibility determination/plan interpretation is a question of law." <u>Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union</u>, 47 F.3d 139, 142 (5th Cir. 1995). We do not think that the application of de novo review is appropriate under the circumstances of this case.

Because Defendants denied that coverage ever existed until the matter was before the district court, the administrator never had occasion to exercise any discretion to interpret the terms of the Plan. For reasons that are unclear, Defendants now agree that the VAD&D Policy was in effect as to Mr. Schadler, and they now ask us to affirm the district court's denial of coverage on the basis of the intentionally self-inflicted injury exclusion.

20

However, "we should not allow ourselves to be seduced into making a decision which belongs to the plan administrator in the first instance." <u>Vizcaino</u>, 120 F.3d at 1013. As the Ninth Circuit has explained, "'It is not the court's function <u>ab initio</u> to apply the correct standard to [the participant's] claim. That function, under the Plan, is reserved to the Plan administrator.'" <u>Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan</u>, 85 F.3d 455, 461 (9th Cir. 1996) (alteration in original) (quoting <u>Henry v. The Home Ins. Co.</u>, 907 F. Supp. 1392, 1398-99 (C.D. Cal. 1995)). We would stand ERISA on its head if we countenanced bypassing the procedures provided by the statute for making benefits decisions in favor of making the initial benefits decision ourselves. We therefore conclude that the district court erred in engaging in a de novo review and making the factual and legal inquiry in the first instance. Rather, when it became clear that Defendants were no longer asserting that Mr. Schadler had not effectively enrolled in the VAD&D Policy, the case should have been remanded to the administrator for the development of a full factual record and for the making of the decision on whether to grant or deny benefits on the basis of the intentionally self-inflicted injury exclusion in the first instance.[11]

---

[11] In so holding, we do not intend to create a steadfast rule that de novo review is never appropriate where a defendant puts forth a reason for denying benefits for the first time at trial. There may indeed be cases in which such review is appropriate, but this is not one of them. For example, it may be appropriate for a district court to undertake a de novo review of the denial where the administrator, despite repeated

### III. CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case to the district court with instructions to REMAND to the Plan administrator for further proceedings consistent with this opinion.  Costs shall be borne by Defendants.

---

opportunities to do so, refuses to make a ruling on an issue or where the administrator so delays making a decision that such delay amounts to a failure to decide the issue.  <u>See, e.g.</u>, <u>Nelson v. EG&G Energy Measurements Group, Inc.</u>, 37 F.3d 1384, 1388-89 (9th Cir. 1994) (reviewing a denial of benefits de novo where the entity vested with the discretion to interpret the terms of the plan did not do so, despite repeated requests from the plaintiffs).  In this case, however, we face neither of those situations, and we therefore need not decide when, if ever, de novo review would be appropriate despite a plan's grant of discretion to its administrator.