**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 00-31280
SUMMARY CALENDAR
_____

DEBORA ROIG

        Plaintiff - Appellant - Cross-Appellee

  V.

THE LIMITED LONG-TERM DISABILITY PROGRAM; ET AL.

        Defendants

THE LIMITED Long-term DISABILITY PROGRAM

        Defendant - Appellee - Cross-Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
(99-CV-2460)

_____

October 9, 2001

Before REYNALDO G. GARZA, DAVIS, and DENNIS, Circuit Judges.

PER CURIAM:[1]

    This case involves the denial of disability benefits under

an employee welfare benefit plan governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1054, *et seq*. Appellant-Cross-Appellee, Debora Roig ("Roig"),

contends that Appellee-Cross-Appellant, The Limited Long-term

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

Disability Program ("the Program"), wrongfully denied her claim for disability benefits.

Roig was a District Sales Manager for Victoria's Secret Stores, Inc. ("Victoria's Secret") in Louisiana from July 21, 1986 to July 14, 1998. Victoria's Secret is a retailer of women's lingerie with stores throughout the country. As a District Sales Manager, Roig oversaw the operation and maintenance of several retail stores in and around New Orleans. The job required Roig to work long hours, stand for extended periods of time, drive extensively, and lift heavy objects.

As a Victoria's Secret employee, Roig participated in an employee welfare benefit plan that provided disability benefits. The benefit plan was self-funded, but Metropolitan Life Insurance, Co. ("Met Life") served as the plan administrator. Met Life had the responsibility and discretionary authority to determine eligibility for disability benefits, construe plan terms, and provide a full and fair review of benefit determinations. Met Life did not insure and was not liable for plan benefits.

The plan divides benefits into two categories: 1) those paid during the first twelve months of disability ("initial benefits"); and 2) those paid beyond the first twelve months ("long-term benefits"). To qualify for initial benefits, the employee must be "under a doctor's care" and "unable to perform

2

any and every duty related to her job." An employee qualifies for long-term benefits "after the first twelve months of benefit payments . . . if [she] cannot work at any gainful occupation for which [she] is reasonably qualified by education, experience, or training."

In September of 1995, Roig was involved in an automobile accident. A year later, she sought treatment at a local medical center for lower back pain and occasional leg pain and numbness. The attending physician diagnosed her with a moderate disc herniation and degenerative disc disease.

Roig was referred to Thomas P. Perone, M.D. for neurosurgical evaluation. Dr. Perone ordered additional testing and evaluation. A May 1, 1998 MRI revealed that Roig still had disc degeneration but the herniation was only minimal, not moderate as originally diagnosed. Despite the improvement in the herniated disc, on June 1, 1998, Dr. Perone determined that Roig could no longer fulfill the requirements of her job due to the extensive travel it required.

On June 15, 1998, Roig visited Dr. Perone again and reported that she had fallen at a mall that morning, striking her left knee and further injuring her back. During this visit, Dr. Perone noted that although the minor disc herniation had resolved with conservative measures, Roig still suffered from "significant degeneration of the bottom three discs in her lumbar spine." As

a result of this degeneration, Dr. Perone recommended that Roig permanently avoid activities that were an integral part of her job, such as lifting, bending, and driving.

On July 13, 1998, Roig stopped working at Victoria's Secret. She submitted an application to Met Life for disability benefits on August 1, 1998. Roig attached Dr. Perone's Attending Physician's Statement to the application. In the statement, Dr. Perone reported that he had seen Roig for treatment on March 13, 1997, April 3, 1997, and June 1, 15, and 19, 1998. He concluded that the degeneration of Roig's lumbar spine, aggravated by the fall at the mall, prevented her from performing the duties of a Victoria's Secret District Sales Manager.

On August 17, 1998, Met Life asked Dr. Perone for medical documentation it could use to evaluate Roig's claim. Apparently, neither Roig nor Dr. Perone supplied any documentation for Met Life's initial review of her claim. However, the Smart Corporation, a medical records correspondence service, sent a letter to Met Life indicating that Dr. Perone had not seen Roig after July 14, 1998.

Met Life denied Roig's claims for benefits on August 27, 1998 because Roig was not under a doctor's care as evidenced by the absence of office visits.

On September 15, 1998, Roig made a written request for a review of the denial of benefits. She attached a letter from Dr.

Perone dated July 13, 1998.  The letter stated "Ms. Roig is under my care for her back condition and should remain off work until I re-evaluate her in the next several weeks."  Dr. Perone also wrote to Met Life on September 15.  In his letter, he stated that he had to reschedule a July 23, 1998 appointment with Roig due to emergency surgery, but he saw her on September 14, 1998 and concluded that "she is unable to return to her prior job on a permanent basis . . . because of the degenerative condition of her lumbar spine."  Dr. Perone then forwarded all treatment notes and test results to Met Life.

 After reviewing the medical records, Met Life denied Roig's claim again.  Met Life did not interview Roig or conduct an independent medical evaluation.  Met Life's communications with Roig indicate that its denial was based on three factual conclusions: 1) Roig had not seen Dr. Perone at all from June 19, 1998 to September 14, 1998; 2) Roig did not contact Dr. Perone in the two weeks following her June 19, 1998 visit, despite his recommendation that she call him if she had any problems with her back; and 3) Roig's condition must have improved by July 14, 1998 since the herniated disc had resolved itself.

 On August 12, 1998, Roig filed a § 1132(a)(1)(B) suit in district court against Met Life and the Plan for failure to pay disability benefits.  The district court found that Met Life was not a proper party to the suit and dismissed it from the

5

proceedings.[2]  The case was submitted on the record for a bench
trial.  The district court awarded Roig initial benefits but
denied long-term benefits because the record lacked evidence to
support them.  The court also awarded Roig prejudgment interest,
post judgment interest, attorney's fees, and costs.

Roig appeals the district court's denial of long-term
benefits.  By way of cross appeal, the Program appeals the
district court's award of initial benefits, pre-judgment
interest, and attorney's fees and costs.

I.

Met Life, the plan administrator, denied Roig's claim for
initial benefits, but the district court reversed Met Life's
decision and awarded Roig benefits.  We AFFIRM the decision of
the district court on this issue.

A.   Standard of Review

In a § 1132(a)(1)(B) case, we review a "district court's
determination of whether a plan administrator abused its
discretion—a mixed question of law and fact—*de novo*."  *Meditrust
Fin. Serv. Corp. v. The Sterling Chem., Inc.*, 168 F.3d 211, 214
(5th Cir. 1999)(quoting *Sweatman v. Commercial Union Ins. Co.*, 39
F.3d 594, 601 (5th Cir. 1994)).  The *de novo* standard of review
grants us the freedom to review the plan administrator's decision

---

[2]Neither party appeals the district court's dismissal of Met
Life.

6

from the same perspective as did the district court. *See id.* Thus, we directly review the decision of the plan administrator for an abuse of discretion. *See id.* Under this standard, we will reverse the decision of the plan administrator if it is not supported by substantial evidence. *See Meditrust*, 168 F.3d at 215.

B.  Analysis

To qualify for initial benefits, the employee must "be under a doctor's care and be certified as being unable to perform any and every duty related to [her] job." The Program contends that Roig fails to meet both components of this requirement–she was neither under a doctor's care nor unable to perform her job.

The record does not support Met Life's conclusion that Roig was not under a doctor's care. Roig had been visiting Dr. Perone for more than a year prior to leaving Victoria's Secret. She visited Dr. Perone at least three times in the two months immediately prior to leaving work. She was scheduled to see him again in late July, but the appointment was cancelled because Dr. Perone had to perform emergency surgery. Roig rescheduled and visited Dr. Perone on September 14, 1998.

Similarly, the record does not support the conclusion that Roig was able to perform her job. In his September 15, 1998 letter, Dr. Perone stated that Roig is "unable to return to her prior job on a permanent basis . . . because of the degenerative

7

condition of her lumbar spine." Met Life, in its capacity as the plan administrator, did not interview Roig or order an independent medical examination. Therefore, it has no evidence to refute Dr. Perone's conclusion.

Met Life based its conclusion on the fact that Roig's herniated disc had improved. However, according to Dr. Perone, the degenerative disc disease, not the herniated disc, rendered Roig unable to perform her job. Without evidence to refute this opinion, the improvement in her herniated disc does not support a conclusion that she was able to perform her job.

There is no substantial evidence in the record to support the Plan's conclusion that Roig was not under a doctor's care and able to perform her job. Therefore, we AFFIRM the district court's award of initial benefits.

## II.

The district court refused to award Roig long-term benefits. Because our decision in *Schadler v. Anthem Life Insurance Co.* precluded the district court from deciding this issue, we VACATE its judgment and REMAND the case to the district court with instructions to REMAND to the plan administrator.

In *Schadler*, the defendants denied the plaintiff's claim that she was entitled to benefits under her husband's accidental death and dismemberment policy on the ground that her husband had

8

never been issued a policy. 147 F.3d 388, 391 (5th Cir. 1998).

After the denial, the plaintiff sued the defendants in district court to recover the unpaid benefits. *Id.* The defendants abandoned the lack of coverage defense in district court. *Id.* at 392. Nevertheless, the district court pointed to an exclusion in the policy for intentionally self-inflicted injury and refused to award the plaintiff benefits because her husband had died from such an injury. *Id.*

We held that the district court could not decide for itself whether the self-inflicted injury exclusion precluded benefits. *Id.* at 398. We said that "the job of a district court is to *review* the administrator's fact-finding and its interpretation of an employee benefit plan's provisions." *Id.* at 397 (emphasis added). A district court may not make initial benefits decisions for itself. *Id.* at 398. By denying benefits based upon the self-inflicted injury exclusion, the district court passed upon an issue the plan administrator never reached. *Id.* In short, the district court was making a benefits decision rather than reviewing one. *Id.* We decided that the district court should have remanded the case to the plan administrator when it became clear that the initial ground for denial was no longer at issue. *Id.*

Just as in *Schadler*, the district court in this case made an initial benefits decision. Met Life denied Roig initial

9

benefits. Consequently, it never reached the issue of whether she was entitled to long-term benefits because they are only available after the payment of initial benefits. After deciding that Met Life abused its discretion by denying initial benefits, the district court turned to the issue of whether Roig was entitled to long-term benefits and denied them on the ground that the record did not contain evidence to support such an award. In so doing, the district court was no longer reviewing a plan administrator's benefits decision, but making one of its own. Once the district court reached the long-term benefits issue, one that had not been passed upon by the plan administrator, *Schadler* required it to remand the case to the plan administrator. Since it did not, we VACATE the district court's judgment that Roig is not entitled to long-term benefits. We REMAND to the district court with instructions that it REMAND the case to the plan administrator to determine whether Roig is entitled to long-term benefits.

### III.

The district court awarded Roig pre-judgment interest on her award of disability benefits. A district court may award prejudgment interest if: 1) the federal act creating the cause of action does not preclude prejudgment interest; and 2) the award of prejudgment interest furthers the congressional policies underlying the act. *Carpenters Dist. Council of New Orleans v.*

10

*Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994).
Whether prejudgment interest is actually awarded in a particular
case is within the district court's discretion. *Id.*

ERISA does not preclude an award of prejudgment interest,
and we have recognized that "an award of prejudgment interest
under ERISA furthers the purposes of that statute by encouraging
plan providers to settle disputes quickly and fairly." *Hansen v.
Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991). Since
both prerequisites were met, the district had discretion to award
prejudgment interest, and, given that the Plan wrongfully denied
Roig benefits, we do not think the district court abused its
discretion.

IV.

The district court awarded Roig attorneys' fees and costs.
We review this decision only for an abuse of discretion. *Salley
v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1016 (5th Cir.
1992). Having found no such abuse, we AFFIRM.

ERISA allows courts to award "a reasonable attorneys' fee
and costs of action to either party." 29 U.S.C. § 1132(g)(1).
This award is purely discretionary. *Bellaire Gen. Hosp. V. Blue
Cross Blue Shield of Mich.*, 97 F.3d 822, 832-33 (5th Cir. 1996).
When exercising this discretion, the court should consider the
following factors:

11

> 1) the degree of the opposing parties' culpability or bad faith; 2) the ability of the opposing parties to satisfy an award of attorneys' fees; 3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; 4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and 5) the relative merits of the parties position.

*Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995)(quoting *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). No single factor is decisive, but these factors are "the nuclei of concerns that a court should address." *Bowen*, 624 F.2d at 1266.

On balance, the factors favor an award of attorneys' fees and costs. Though Roig did not bring suit to benefit all participants or resolve a significant legal question, the Program can pay the fees, an award will serve as a deterrent to future delays and wrongful denials, and, as evidenced by our opinion, the merits of the case favor Roig. For these reasons, we AFFIRM the district court's award of attorneys' fees and costs.

## IV.

In conclusion, we AFFIRM the district court in all respects except that we VACATE its judgment denying Roig benefits beyond the initial twelve months of her disability. We REMAND to the district court with instructions to REMAND to the plan administrator for further proceedings consistent with this opinion.

12