**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 01-40862**

---

**EAST TEXAS MEDICAL CENTER,**

Plaintiff-Appellee,

**versus**

**HEARTLAND EXPRESS, INC.; HEARTLAND EXPRESS, INC. EMPLOYEE**
**HEALTHCARE PLAN; THE EPOCH GROUP, LC,**

Defendants-Appellants.

---

**Appeal from the United States District Court**
**for the Eastern District of Texas**
**(6:99-CV-633)**

---

November 19, 2002

Before DAVIS, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Concerning the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, this appeal turns on whether, pursuant to § 1113(l), there was adequate notice of the reasons for the denial of a benefits determination. Heartland Express, Inc., Heartland Express, Inc. Employee Healthcare Plan, and The Epoch Group, LC, appeal the district court's holding them liable under both an abuse of discretion and *de novo* standard of review for the plan

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

administrator's denying coverage for expenses for treating Jessie Pope's injuries. Because the plan administrator failed to adequately disclose the basis for its decision, we **VACATE** the judgment and **REMAND** with instructions to **REMAND** to the plan administrator.

## I.

On 2 November 1996, while trying to pass another vehicle, Jessie Pope collided with a Ford Escort containing five people. All involved were seriously injured; two of the Escort's occupants died soon after the collision. The accident report noted: Pope was driving her vehicle erratically, at high speed, and passing other vehicles; *she was in possession of a legal prescription for pain*; and a blood sample was obtained.

Pope was admitted to East Texas Medical Center (ETMC), to which she assigned her rights and benefits under her insurance policy. She was released three months later, with medical expenses totaling more than $350,000.

At the time of the collision, Pope's husband was employed by Heartland Express. It provides (as plan sponsor and plan administrator) an employee benefit plan — Heartland Express, Inc. Employee Healthcare Plan — which is self-funded and covered by ERISA. Pope is a plan beneficiary.

Heartland has contracted with The Epoch Group to serve as a third-party claims supervisor. When a claim is filed, Epoch is

authorized to pay or deny it, "based on the terms of the Plan documents and upon making a reasonable effort to determine the relevant law applicable to any situation".  If Epoch cannot make a decision within those guidelines, it refers the claim to Heartland, as plan administrator.

The plan document excludes coverage "for any expenses [the employee or spouse] incur[s] ... as a result of having engaged in any illegal activity other than misdemeanor traffic violations" (illegal activity exclusion).  The plan document does not define "illegal activity"; it does contain a choice-of-law provision:  "To the extent federal law does not apply, any questions arising under the Plan shall be determined under the laws of the State of Iowa".

Under the terms of the plan document, Epoch attempted to determine whether Pope's medical expenses were covered.  After learning from a supplemental police report that Pope had been charged with manslaughter (but had not then been indicted), *with the results of the blood test pending*, Epoch advised Heartland on 11 March 1997 that it could not make a determination and referred the claim to Heartland.  The same day, Heartland informed Epoch: "it remains our corporate position that the medical expenses claim for ... Pope should be denied", citing the illegal activity exclusion.  By letter dated 31 March 1997, Epoch informed Pope that Heartland denied the claim "based on information obtained through

3

the police report and other sources" and cited the illegal activity exclusion. Epoch notified ETMC by separate letter.

Pope retained an attorney and appealed the decision on 26 April 1997. As part of that administrative appeal, she requested all documentation and information used to make the determination and an appearance before the Plan trustees. ETMC also appealed the decision, requesting similar information and claiming Heartland's denial notice *failed* to provide the *specific reason* for the denial, as required by 29 C.F.R. § 2560.503-1(f).

On 27 May, approximately a month after Pope began her appeal, the Texas Department of Public Safety crime lab submitted its report; it determined Pope's blood alcohol content was *negative*. However, her blood test was positive for Codeine (.36 milligrams per liter), Butalbital (10 milligrams per liter), Meprobamate (52 milligrams per liter), and Carisoprodol (less than .4 milligrams per liter).

Approximately a month later, on 25 June, Pope was indicted on two counts of intoxication manslaughter. On 18 July, Epoch informed Pope the Plan trustees denied her appeal "[a]fter reviewing all materials, including the 2 indictments returned on June 25, 1997" and, again, citing the illegal activity exclusion.

ETMC contends its appeal was not denied until a 9 March 1998 letter from Heartland's attorney informed ETMC that Heartland's information indicated Pope was driving under the *influence of*

4

*alcohol* and was indicted for intoxication manslaughter, which excluded her from eligibility for benefits. The plan document requires an appeal to be decided within 60 days. If there is a delay in the trustees' decision, the plan document requires the trustees to notify the claimant of the delay. Heartland contends: the denial of Pope's appeal is the only relevant appeal; and the 9 March letter was not a denial of an appeal, but merely pre-litigation posturing by its attorneys.

In late 1999, ETMC filed this action, with claims under ERISA (benefits due under the plan, breach of fiduciary duty, and failure to provide information) and state law. On 13 March 2000, Pope pleaded guilty to two counts of negligent homicide (a felony) and received a probated sentence of two years imprisonment.

At the 5 March 2001 bench trial, Defendants called a witness to admit the administrative record; ETMC, a nurse and a representative of its business office to admit evidence of Pope's injuries and her bill. The district court, in a 23-page opinion, reviewed the Plan trustees' decision under both *de novo* and abuse of discretion standards of review and made extensive findings of fact and conclusions of law.

The district court determined: Pope's injuries did not result from illegal activity under either Iowa or Texas law; alternatively, the trustees' denial of the claim was arbitrary and capricious. The court held all Defendants — the Plan, Heartland,

and Epoch — liable for benefits due; made no award on ETMC's ERISA claims of breach of fiduciary duty or failure to provide information; and denied its state law claims.

## II.

Appellants-Defendants contend the district court erred in reviewing the trustees' decision *de novo* and instead should have reviewed for abuse of discretion. They contend: the administrative record supports the trustees' factual determination that Pope's injuries resulted from illegal activity; and the trustees' interpretation is correct under both Iowa and Texas law. Finally, two of the Appellants-Defendants, Heartland and Epoch, contend the district court erred in holding them liable for benefits under ERISA.

ETMC counters that *de novo* review was appropriate because of the plan document language and the trustees' conduct. Also, as it did in district court, it asserts Heartland and the Plan trustees failed to adequately disclose the basis for the decision, as required by law. It maintains that, even under an abuse of discretion standard, the district court was correct because: no evidence shows Pope was intoxicated; the denial was improper under both Iowa and Texas law; and Heartland's conflict of interest lessens the deference to be given the decision.

We agree with ETMC that the Plan's initial denial failed to sufficiently comply with ERISA's notice requirements. ERISA

6

provides certain minimum requirements that must be met when a plan administrator denies a benefits claim. *See **Schadler v. Anthem Life Ins. Co.**,* 147 F.3d 388, 393 (5th Cir. 1998). Section 1133 of ERISA, in part, requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant". 29 U.S.C. § 1133(1). The then-applicable Department of Labor regulations concerning this section provide in pertinent part:

> (f) Content of notice. A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth *in a manner calculated to be understood by the claimant*:
>
> (1) The *specific reason or reasons for the denial*; [and]
>
> (2) Specific reference to pertinent plan provisions on which the denial is based[.]

29 C.F.R. § 2560.503-1(f)(1997) (emphasis added).

These requirements are intended to assist the claimant prepare for further administrative review, as well as any subsequent proceedings in federal courts. *See **Schadler**,* 147 F.3d at 394 (quoting ***Matuszak v. Torrington Co.**,* 927 F.2d 320, 323 (7th Cir. 1991)). The denial must include specific reasons for the decision; "*[b]aldfaced conclusions* do not satisfy this requirement". ***Id.*** (emphasis added; internal quotation marks and citations omitted).

7

And, as discussed, the explanation requirement is intended to ensure the beneficiary receives "*meaningful review* of that denial". ***Halpin v. W.W. Grainger, Inc.***, 962 F.2d 685, 689 (7th Cir. 1992) (emphasis added).

In ***Schadler***, we remanded the case to the administrator to make an initial determination because it failed to provide notice consistent with 29 U.S.C. § 1133(1) and 29 C.F.R. § 2560.503-1(f). 147 F.3d at 399. We concluded: ERISA requires the district court to review the plan administrator's fact-finding and interpretation of the benefit plan; but, for it to do so, the administrator must first make factual findings and make them known to the beneficiary. ***Id.*** at 397-98.

Heartland's denial, by a letter from Epoch, merely stated: "based on information obtained through the police report and other sources, charges have been determined to be ineligible under the Plan". While Heartland complied with 29 C.F.R. § 2560.503-1(f)(2) (requiring citation of the relevant plan provision), it failed: to provide any facts that warranted application of the exclusion; and to indicate how a police report filed in Texas met the illegal activity exclusion as determined by Iowa law (the law applicable under the plan document). In both the initial denial and the denial of Pope's appeal, Heartland and the trustees failed to explain what activity by Pope was illegal. Additionally, the absence of any explanation of its interpretation of the exclusion

8

and the vague reference to "other sources" cannot be an explanation "calculated to be understood by the claimant". 29 C.F.R. § 2560.503-1(f).

Because of this shortcoming, the denial failed to comply with § 2560.503-1(f) and, more importantly, 29 U.S.C. § 1133(1). Consequently, this matter should be remanded to the plan administrator.

Lending further support to our conclusion that this matter should be remanded is the existence of evidence not before Heartland when the denial decision was made. After Pope's appeal to the Plan trustees was denied, she pleaded guilty to negligent homicide. As a result of this subsequent development, one or both of the parties should have requested a remand in the light of this new evidence. *See, e.g., **Barhan v. Ry-Ron, Inc.***, 121 F.3d 198, 202 n.5 (5th Cir. 1997); ***Moller v. El Campo Aluminum Co.***, 97 F.3d 85, 88-89 (5th Cir. 1996); ***Miller v. United Welfare Fund***, 72 F.3d 1066, 1071-72 (2d Cir. 1995) (remand appropriate, unless it would be a useless formality).

### III.

For the foregoing reasons, the judgment is **VACATED**, and this case is **REMANDED** to the district court with instructions to **REMAND** to the plan administrator.

Needless to say, the remand to the plan administrator will begin anew the administrative review of this matter; and, if the claim is denied, this may result in an action being again filed

9

in district court. Should that happen, the district court will, of course, write on a clean slate, based upon the issues presented and the underlying claim-process. Obviously, there is no way now to know what those issues might be.

It goes without saying that, in remanding to the plan administrator, we vacate not only the judgment but also the district court's underlying findings of fact and conclusions of law. Such vacated items include, but are not limited to, the district court's rulings challenged in this appeal regarding the proper standard of review for the claim-denial, the valid bases for claim-denial, and the liability of Heartland and Epoch, with the Plan, for benefits under ERISA.

Again, should a new action be filed, the district court will then address the issues then presented. Because we are vacating the judgment and, concomitantly, the underlying findings and conclusions by the district court, such findings and conclusions do not constitute the law of the case. Likewise, we express no opinion about the challenges now presented on appeal, including those concerning the applicable standard of review, proper bases for claim-denial, and joint liability, other than to observe that those challenges have considerable force. In any event, the new administrative process on remand will result in a new claim-decision which may possibly become the subject of a new action in district court. Should that be the case, we know each issue then

10

presented will receive new and thorough analysis by the district court.

                                        ***VACATED and REMANDED***