United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 14, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-50567

_____

ALTON ROBINSON,

                                Plaintiff - Appellant,

                    v.

AETNA LIFE INSURANCE COMPANY,

                                Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before GARWOOD, DAVIS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an appeal from a district court's grant of summary judgment in an ERISA case. Alton Robinson complained below that Aetna Life Insurance wrongly terminated his disability benefits. The district court granted summary judgment in favor of Aetna. On appeal, Robinson claims the following errors: (1) Aetna failed to provide him with a full and fair review; (2) the district court considered evidence outside the administrative record; and (3) Aetna's decision to terminate his benefits is not supported by evidence in the administrative record. Agreeing with Robinson on each point, we vacate and remand with instructions to enter judgment in favor of Robinson.

## I.   BACKGROUND

Appellant Robinson worked as a sales representative for Glazer's Wholesale Drug Company, Inc. ("Glazer"), a wholesale distributor of alcoholic beverages. Robinson's job required him to drive 800 to 1000 miles per week. In March of 2002, Robinson suffered a stroke, which permanently impaired the peripheral vision in his right eye. His doctors advised that it would be dangerous for him to drive.

Unable to continue at his position with Glazer, Robinson applied to Appellee Aetna for long-term disability benefits. Aetna served as the administrator and insurer for Glazer's employee welfare benefits plan ("the Plan"). The Plan provides long-term disability benefits when beneficiaries are "totally disabled." The Plan further explains that beneficiaries are totally disabled when they are unable to perform the "material duties" of their "own occupation[s]." In August of 2002, Aetna concluded that Robinson qualified as totally disabled. It determined that Robinson could not perform the material duties of a "field sales rep" because that job "required [him] to drive 25%+ of the time." Consequently, Aetna approved Robinson's claim for benefits.

Eighteen months later, Aetna received an attending physician's statement from Robinson's treating physician, Dr. Isaac Loose. A question on the form asked what restrictions the physician had placed on the patient. As examples, the form listed: "Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts,

2

etc." In response, Dr. Loose wrote, "None." He also wrote that Robinson had "no restrictions due to ocular history." Construing this as an indication that Robinson's condition had improved, Aetna terminated Robinson's benefits. Robinson asked Aetna to review this decision.

Robinson's appeal included a new letter from Dr. Loose, which clarified or corrected the attending physician's statement. The letter concluded, "Driving is hazardous for this patient especially in heavy traffic areas. Please review his disability benefits." Robinson also included a letter from another treating physician, Dr. C. Armitage Harper, who similarly wrote, "It is unsafe for [Robinson] to drive any vehicle with this visual field loss." Seeking to resolve the apparent discrepancy between Dr. Loose's two statements, Aetna referred Robinson's file to one of its own physicians, Dr. Oyebode A. Taiwo. Dr. Taiwo determined that Robinson's condition was serious and permanent and that he was incapacitated from any occupation which required the operation of a motor vehicle.

Considering this evidence on review, Aetna upheld the termination but changed its reasons for the decision. It explained to Robinson by letter that it had spoken to a vocational consultant and determined that driving was not a material duty of a sales representative[1] in the general economy. The administrative record

_____

[1] The parties contest whether Robinson should be classified as a "field sales representative" or a "sales representative." The administrative record uses both labels. Neither party

3

does not reflect that Aetna contacted a vocational consultant.  In its review letter, Aetna told Robinson that he had exhausted his administrative remedies.

Robinson sued under the Employee Retirement Income Security Act ("ERISA") "to recover benefits due to him under the terms" of the Plan.  29 U.S.C. § 1132(a)(1)(B) (2000).  At the close of discovery, Aetna moved for summary judgment.  On March 29, 2005, the district court granted Aetna's motion, and this appeal followed.

## II.  STANDARD OF REVIEW

This Court reviews summary judgments *de novo* in ERISA cases, applying the same standards as a district court.  *See Baker v. Metropolitan Life Ins.*, 364 F.3d 624, 628 (5th Cir. 2004).

## III.  DISCUSSION

### A.  PROCEDURAL CHALLENGE TO AETNA'S REVIEW

Robinson complains that Aetna failed to follow ERISA-mandated procedures.  In relevant part, ERISA provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall–
>
> (1) provide adequate notice in writing to any participant

---

explains the substantive difference, if any, between the two designations.  For brevity and convenience, we will refer to Robinson as a sales representative.  We do not intend this to have any legal import.  The dispute over the proper label for Robinson's occupation is really about (1) the definitions of "own occupation" and "material duties" as a matter of law and (2) whether, under those definitions, driving is a material duty required by Robinson's occupation as a matter of fact.  Those matters are discussed in Part III, *infra*.

4

or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2000). Challenges to ERISA procedures are evaluated under the substantial compliance standard. *See Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 460 (6th Cir. 2003). This means that "[t]echnical noncompliance" with ERISA procedures "will be excused" so long as the purposes of section 1133 have been fulfilled. *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000).

Robinson argues that he was denied the full and fair review mandated by section 1133(2) in two ways. First, he points out that Aetna did not provide review of its specific basis for rejecting his claim. Second, he highlights Aetna's failure to identify the vocational expert upon whom it allegedly relied.

Aetna's specific reason for terminating Robinson's benefits has never been reviewed at the administrative level. Aetna initially notified Robinson that it terminated his benefits because it believed he was able to drive. Upon review, Aetna changed its reasoning. Aetna informed Robinson for the first time in its

5

review letter that it had determined his occupation did not require driving and told Robinson that he had exhausted his administrative remedies. Robinson never had an opportunity to contest at the administrative level this new basis for terminating his benefits. Aetna points out that it did review the ultimate decision that Robinson was not totally disabled. It argues that this was sufficient. We disagree and hold that section 1133 requires an administrator to provide review of the specific ground for an adverse benefits decision.

Subsection (1)'s mandate that the claimant be specifically notified of the reasons for an administrator's decision suggests that it is those "specific reasons" rather than the termination of benefits generally that must be reviewed under subsection (2). *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 446 (6th Cir. 2005) (holding that an administrator failed to substantially comply with section 1133 where the initial notice of termination failed to state one of the grounds on which it ultimately relied). Furthermore, this Court has previously read the two subsections of section 1133 as complementing each other. In *Schadler v. Anthem Life Insurance*, this Court explained that "the requirement that the administrator disclose the basis for its decision is necessary so that beneficiaries can adequately prepare for any further administrative review . . . ." 147 F.3d 388, 394 (5th Cir. 1998) (internal punctuation omitted). The notice requirements of ERISA

help ensure the "meaningful review" contemplated by subsection (2). *Id.* (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)); *see Hackett*, 315 F.3d at 775 (stating that effective review requires "a clear and precise understanding of the grounds for the administrator's position"). Additionally, mandating review of the specific ground for a termination is consistent with our policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court. *See Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc). Thus, Aetna failed to comply with section 1133(2) when it terminated Robinson's benefits without reviewing the specific ground for that decision.

In his second section 1133(2) argument, Robinson faults Aetna for not disclosing its vocational consultant. ERISA regulations require administrators to "[p]rovide for the identification of . . . vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefits determination . . . ." 29 C.F.R. § 2560.503-1(h)(3)(iv). Furthermore, the procedures governing disability plans "will not . . . be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless [they] comply with the [regulation requiring disclosure of vocational experts]." 29 C.F.R. § 2560.503-1(h)(4). Aetna failed to comply with this regulation.

Aetna does not directly dispute Robinson's claim that it violated ERISA regulations by failing to disclose the identity of its vocational consultant. Instead, it maintains that it substantially complied with ERISA despite the "*de minimus* procedural violations alleged by Robinson." Yet, the two procedural errors shown by Robinson, taken together, amount to more than mere technical noncompliance or a *de minimus* violation. Aetna's shifting justification for its decision and failure to identify its vocational expert meant that Robinson was unable to challenge Aetna's information or to obtain meaningful review of the reason his benefits were terminated. Consequently, Aetna did not substantially comply with section 1133.

B. SUBSTANTIVE CHALLENGE TO TERMINATION OF BENEFITS

Aetna terminated Robinson's benefits upon deciding that driving was not a material duty of Robinson's own occupation. Robinson argues that this finding is not supported by concrete evidence in the administrative record. Before we assess the merits of this argument, we must address two preliminary issues. First, we consider what information was properly before the district court. Second, we discuss the proper standard for evaluating Aetna's decision.

*1. The Dictionary of Titles Is Evidence Outside the Administrative Record and May not Be Considered*

Aetna attached to its motion for summary judgment an occupation description from the Department of Labor's Dictionary of

Occupation Titles ("DOT"). The DOT entry states that twenty-eight activities are more important than operating motor vehicles for a sales representative in the general economy. Robinson argues that the district court erred by considering this information, which was not in the record when Aetna terminated his benefits. Aetna responds that the DOT is merely regulatory authority supporting Aetna's reasonable construction of the Plan.

In *Vega*, this Court stated, "A long line of Fifth Circuit cases stands for the proposition that, when assessing *factual questions*, the district court is constrained to the evidence before the plan administrator." 188 F.3d at 299 (emphasis added). We believe that the DOT entry is evidence that addresses a "factual question." Although it is styled as a dictionary, the DOT actually represents extensive fact gathering and detailed data analysis. *See Dionida v. Reliance Standard Life Ins.*, 50 F. Supp. 2d 934, 939 n.3 (N.D. Cal. 1999). Moreover, several of our sister Circuits have recognized that an administrator makes a finding of fact when it determines the material duties of a certain occupation. *Kinstler v. First Reliance Life Ins.*, 181 F.3d 243, 252–53 (2d Cir. 1999) (labeling as a "fact issue" the material duties of a given occupation); *see Lasser v. Reliance Standard Life Ins.*, 344 F.3d 381, 387–88 (3d Cir. 2003); *Gallagher v. Reliance Standard Life Ins.*, 305 F.3d 264, 270–73 (4th Cir. 2002).[2] Accordingly, the

_____

[2] Aetna mistakenly relies on *Gallagher* to support its argument that the district court properly considered the DOT.

9

district court erred in considering the DOT entry because that evidence was not in the administrative record.[3]

### 2. Aetna's Decision Will Be Assessed Under a Modified Abuse of Discretion Standard

Where a plan grants the administrator discretion to determine claims for benefits, claimants may recover under ERISA only if the administrator's rejection of their claim was an abuse of discretion. *See Atteberry v. Memorial-Hermann Healthcare Sys.*, 405 F.3d 344, 347 (5th Cir. 2005). The parties agree that the Plan vests Aetna with such discretion.

In this case, Aetna has an "inherent conflict of interest" because it serves both as the administrator and insurer under the Plan. *See Lain v. UNUM Life Ins.*, 279 F.3d 337, 343 (5th Cir. 2002). A conflicted administrator merits less deference. *See Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc). This Court applies a "sliding scale" to determine how much deference to give: "[t]he greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.* at 297. In *Lain*, we confronted a case where, as here, the insurer and administrator were the same

Aetna misses the critical distinction between this case and *Gallagher*: the DOT information in *Gallager* *was* in the administrative record.

[3] There are "certain limited exceptions" to the prohibition on considering information outside the administrative record. *Estate of Bratton v. Nat'l Union Fire Ins.*, 215 F.3d 516, 521 (5th Cir. 2000). Aetna does not argue that any of these exceptions apply.

entity.  279 F.3d at 343.  As we did in *Lain*, we will assume *arguendo* that an administrator with such a conflict is "entitled to all but a modicum" of the deference afforded to unconflicted administrators.  *Id.*  Under this standard, the basis for Aetna's decision must be supported by "some concrete evidence in the administrative record."  *Vega*, 188 F.3d at 302.

3.  *No Concrete Evidence Supports Aetna's Decision*

Aetna found that "driving is not considered a material duty of a sales representative in the general economy."  Once the DOT definition is appropriately removed from consideration, however, we find a lack of concrete evidence to support this conclusion.

The only dispute is an evidentiary one; the parties do not disagree over how the Plan should be interpreted.  As discussed above, the Plan provides benefits to claimants who are unable to perform "the material duties of [their] own occupation[s]."  Aetna has interpreted the term "own occupation" to mean employment of the same general character as the plaintiff's job in the general economy.  Aetna has explained that the "material duties" of an occupation are the "essential tasks" generally required of employees in the occupation.  Additionally, the Plan provides, "If solely due to disease or injury, you are unable to earn more than 80% of your adjusted predisability earnings, you will not be deemed to have performed the material duties of your own occupation on that day."  Robinson does not dispute Aetna's right to reasonably

11

interpret the terms of the Plan and does not challenge the reasonableness of its construction.

Under the Plan as interpreted by Aetna, the record would have to reveal some concrete evidence that driving was not an essential task required of employees in positions comparable to Robinson's job in the general economy.[4] The record does not contain such concrete evidence. The letter rejecting Robinson's appeal states that Aetna spoke to a vocational consultant, who advised that driving was not a material duty of a sales representative in the general economy. Yet no vocational analysis appears in the record. Indeed, Aetna does not rely on its alleged conversation with a vocational consultant in arguing that its termination of benefits was reasonable. It relies instead on DOT information outside the administrative record.

The record does reflect that Robinson was required to drive 800 to 1000 miles per week at his job as a sales representative for

---

[4] At oral argument, Aetna contended that Robinson would not merit benefits even if driving *is* a material duty of Robinson's own occupation. If Robinson were able to perform any one of the material duties of his own occupation, Aetna argued, he would not be totally disabled under the Plan. Aetna failed to raise this issue in its brief, and so the argument is waived. *See, e.g.*, *Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 853 n.9 (5th Cir. 1998). Additionally, this was not the reason Aetna gave for terminating Robinson's benefits. *Vega* requires us to review the actual "basis for [the administrator's] denial" of benefits, not its post-hoc rationalization. 188 F.3d at 299. Accordingly, we express no opinion on the merits of Aetna's argument that claimants are only totally disabled under the Plan if they are unable to perform each and every material duty of their own occupation.

Glazer.  According to Aetna's own internal analysis, driving took up "25%+" of Robinson's work day.  Contrary to Aetna's contention, its definition of the term "own occupation" does not render the tasks required by Robinson's Glazer job irrelevant.  In *Kinstler*, the Second Circuit explained how particular duties of the plaintiff's job were important for determining what duties were material to her occupation in the general economy:

> Though her precise duties do not define her regular occupation, in this case they *well illustrate* the duties of a director of nursing at a small health care facility, and *nothing in the record* provides any basis for thinking that such a position at a facility comparable to hers requires [different duties].

181 F.3d at 253 (emphasis added); *see Lasser*, 344 F.3d at 388 (holding that the plaintiff's particular duties were relevant in defining the material duties of an orthopedic surgeon).

Robinson's duties at Glazer serve to illustrate the duties that a sales representative at a comparable firm might perform.  As in *Kinstler*, no evidence in the administrative record suggests that Robinson's driving duties are atypical of sales representatives. *See Mitchell v. Fortis Benefits Ins.*, 2005 WL 1793641, *6 (4th Cir. July 29, 2005) (unpublished) (holding that the administrator abused its discretion in determining that driving was not a material duty of a chemical sales representative where the plaintiff's position involved driving 1500 to 2000 miles per week).  In sum, Aetna's finding that driving is not a material duty of Robinson's own occupation is not supported by concrete evidence in the

13

administrative record.

## IV.  CONCLUSION AND DISPOSITION

Although Robinson did not move for summary judgment in the district court, we have the authority to grant judgment in his favor. *See Black Warrior Elec. Membership Corp. v. Mississippi Power*, 413 F.2d 1221, 1226 (5th Cir. 1969); *Matter of Continental Airlines*, 981 F.2d 1450, 1458 (5th Cir. 1993) ("This court has the power to render summary judgment for a nonmoving party . . . .") Awarding judgment to a party that did not move for summary judgment below is proper where (1) there is no genuine issue of material fact and (2) the opposing party has had a full opportunity to (a) brief the legal issues and (b) develop a record. *See Monumental Life Ins. v. Hayes-Jenkins*, 403 F.3d 304, 315 n.21 (5th Cir. 2005).

First, there is no genuine issue of material fact here.  We have concluded both that Aetna failed to substantially comply with ERISA procedures and that Aetna abused its discretion by terminating Robinson's benefits.  Second, Aetna was required to develop its factual record at the administrative level. *See Vega*, 188 F.3d at 302.  Lastly, Aetna fully briefed the relevant legal issues both before this Court and below.  Accordingly, we VACATE and REMAND to the district court with instructions to enter judgment in favor of Robinson and determine the amount of damages.[5]

---

[5] We reject Aetna's suggestion that remand to the administrator is required.  In *Vega*, as here, no concrete evidence supported the administrator's basis for denying benefits.  We declined a remand to allow the administrator "another opportunity to make a record" because "each of the

14

parties" must "make its record before the case comes to federal court." *See Vega*, 188 F.3d at 302 n.13. For the same reason, we believe that remand is inappropriate here.