JENNIFER W. ELROD, Circuit Judge,
dissenting:
The majority deviates from the “substantial compliance” standard and affirms VPA’s decision based on a reason VPA never gave when it initially terminated Cooper’s benefits. We may typically affirm the district court on “any grounds in the record to support the judgment.” Mangaroo v. Nelson, 864 F.2d 1202, 1204 n. 2 (5th Cir.1989). This is not our standard, however, when we review the procedural adequacy of an administrator’s review of a benefit termination, as “substantial compliance” with 29 U.S.C. § 1133(2) requires that a plan administrator disclose the precise “basis for its decision ... so that beneficiaries can adequately prepare for any further administrative review, as well as an appeal to the federal courts.” Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 394 (5th Cir.1998) (citation and internal quotation marks omitted). At the review stage, VPA based its decision solely on a ground raised for the first time, which Cooper has never had an opportunity to contest on the merits at the administrative level. It is not our task to recast this flawed review as having had another basis, as such a result deprives Cooper of her right to a “full and fair review” mandated by § 1133(2). See Lacy v. Fulbright & Jaworski 405 F.3d 254, 257 (5th Cir.2005). Accordingly, I dissent.
VPA’s review of Cooper’s original benefits termination did not comport with the requirements set out in § 1133 and this court’s interpretation of those requirements. ERISA requires that every employment benefit plan “(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant” and “(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.”[1] § 1133 (emphasis added). In Robinson v. Aetna Life Ins. Co., this court interpreted these subsections to require a review of the “specific reasons” given in the initial claim denial “rather than [a review of] the termination of benefits generally.” 443 F.3d 389, 393 (5th Cir.2006). An ERISA claimant is confined to the administrative record when appeal *658 ing her denial of benefits to the courts. Following her initial denial, the claimant’s sole opportunity to submit evidence for inclusion in the record is at the administrative appeal stage. It therefore is imperative that the administrator give the “specific reasons” for its denial of a claim so that the claimant has a fair opportunity to gather evidence to submit for the record, with which the claimant will challenge the specific reasons for denial.[2] Where a claimant is not given a review of the specific reasons for the original termination of her benefits, she is denied her right to a “full and fair review” guaranteed under 29 U.S.C. § 1133. Robinson, 443 F.3d at 393.
A.
I would hold that Cooper was denied a full and fair review because, just as the court found in Robinson: “the specific reason for terminating [Cooper’s] benefits has never been reviewed at the administrative level.” Id. Both parties agree that Cooper’s benefits were originally terminated on the basis that Cooper’s spinal condition had improved to the point that she would not meet the 2(q)(iii) definition of “Totally Disabled.” A different reason Cooper’s employment at Ben Bridge Jewelers, which she acquired after the relevant date to determine benefit eligibility — 'was given for her benefit termination on appeal. The majority attempts to characterize VPA’s decision on appeal as one based on Cooper’s “medical evidence,” with Cooper’s new employment serving “merely [as] support [for] the Administrator’s original decision to deny the claim based on the medical evidence contained within the record.”
The plain reading of the review letter supports no such interpretation.
In regard to the medical evidence supporting Cooper’s improved health condition — the sole reason given for Cooper’s original termination of benefits — the two- and-a-half page, single-spaced review letter offered only three terse sentences:
During the office examination, Ms. Cooper reported that her symptoms were much better. She reported a decrease in pain medications, starting an exercise regiment, and was looking for a job. She ranked her pain at 2/10.[3]
These sentences offer no insight on the propriety of VPA’s original determination regarding whether these improvements disqualified Cooper from meeting the definition of “Total Disability.” Rather, they are mere recitations of facts contained in the record accompanied by no analysis. The majority states that these sentences immediately followed a discussion of “the significance of the medical evidence on record that established Cooper was capable of employment.” The paragraphs in question, however, provide no “discussion” or analysis of the evidence. Rather, they contain only a listing of Cooper’s ailments, rote descriptions of the procedures she underwent to correct them, and descriptions of documents in the record that attest to these facts. These paragraphs are analogous to the “fact” section in a judicial opinion, as they contain no language weighing or judging the evidence. The actual analysis of the claim begins with a paragraph discussing Cooper’s employment:
*659 As you are aware, Ms. Cooper’s claim and appeal are being reviewed based on the definition of Total Disability noted above .... We noted in the medical records from Anderson Cancer Center that Ms. Cooper was employed at Ben Bridge Jewelers, Inc.
Thereafter, VPA focuses on the Ben Bridge Jewelers job throughout the remainder of the letter.
The majority nevertheless suggests that Cooper’s jewelry store employment, which Cooper accepted only after the relevant deadline for establishing her benefit eligibility, and thus could not have been considered at the time of her original benefit termination, was simply “support” for VPA’s ultimate conclusion based on her health improvements.[4] This is not the case. If the jewelry store discussion was merely “support,” like suspenders added to an existing belt, VPA’s analysis could stand on its own without them. But if the portions of the letter which discuss the jewelry store job are removed, all that remains is a bare-bones factual summary, concluding with a statement that “[w]e are therefore, reaffirming the termination of benefits effective March 25, 2006.” By themselves, the three sentences on Cooper’s improved health, which constitute no more than factual recitations, are woefully insufficient to constitute a “meaningful review” of this reason for terminating her benefits. See Robinson, 443 F.3d at 393.
Despite these inadequacies, the majority contends that no bait-and-switeh occurred as the review had the same “basis” as the original termination: Cooper’s “ability to maintain employment.” This might be correct if the initial termination letter had given, as a reason for decision, Cooper’s ability to maintain some form of employment, regardless of the skill-level or experience necessary to perform some occupation. This was not its reasoning, however. The specific reason given for the initial termination was that medical evidence demonstrated Cooper was able to perform certain managerial jobs related to her “education, training, [and] experience.” Although the majority may believe that “Total Disability” under 2(q)(iii) is determined without regard to a beneficiary’s experience, education, or training, such an interpretation must be recognized for what it is a decision on the merits, not a “specific reason” supplied by the VPA in the initial termination. Section 2(q)(iii) defines Total Disability as being “continuously able to perform any occupation for which [s]he is or may become qualified by reason of [her] education, training or experience” (emphasis added). The initial termination letter never stated that Cooper’s ability to be employed in any occupation would bar her from obtaining benefits. To the contrary, this letter explicitly considered Cooper’s “education, training, and experience,” in determining that medical evidence supported Cooper’s ability to perform certain skilled managerial occupations which offered compensation comparable to the $95,000 salary she earned as a manager at Hewlett-Packard. Therefore, any subsequent finding on appeal based on Cooper’s mere ability to “maintain” some form of *660 employment must be considered a new and separate basis.
The majority also suggests that the medical evidence and Cooper’s jewelry store employment are not really two different reasons, but merely “two different aspects of the same basis for denying Cooper’s claim: her ability to maintain employment.” But a supporting factor must be considered a separate basis when its omission from the initial termination decision prevents the beneficiary from being able to “adequately prepare ... for any further administrative review, as well as an appeal to the federal courts.” See Robinson, 443 F.3d at 394 (quoting Schadler, 147 F.3d at 394). Cooper’s employment here must be considered a separate basis, rather than support, where its omission from the initial termination letter deprived Cooper of the opportunity to adequately prepare for her appeal.
As noted by the district court, Cooper’s benefits were initially terminated for the specific reason that her medical condition had “improved” to the point where she no longer met the definition of “Total Disability.” Cooper dedicated her efforts to assembling medical evidence to refute this “specific reason,” but this evidence was disregarded totally because Cooper was “in fact working.”[5] Cooper’s potential to perform a non-technical, non-managerial sales position was not implicated by the specific reason given in the initial termination letter, so Cooper was never on notice that she should argue that her ability to perform some occupation does not preclude her from showing “Total Disability.” In its haste to terminate Cooper’s benefits because she “was working,” VPA denied Cooper any opportunity to present evidence that her work at the jewelry store was not sufficiently related to her college education and skilled work history to impact her eligibility under section 2(q)(iii). She was likewise denied the chance to rebut VPA’s conclusion that she worked overtime at the jewelry store. She contends on appeal that she actually worked less than forty hours per week, but that any work performed on Saturdays was labeled as “overtime” pay on her pay-stubs. The lack of notice that her jewelry store employment would be a basis for decision prejudiced Cooper’s ability to alter VPA’s decision terminating her benefits. If the requirement that an administrator provide a “full and fair review” means anything, it must mean that a plan administrator may not deny the claimant the opportunity to refute the specific reason given in the initial determination under the guise of labeling a new basis as mere “support” for the old.
B.
The review of Cooper’s benefit termination was also insufficient for the second reason espoused in Robinson: Cooper “never had an opportunity to contest at the administrative level [the] new basis for terminating [her] benefits.” See Robinson, 443 F.3d at 393. Although the majority attempts to cast a Robinson-style bait- and-switch as the only manner in which an administrative review can run afoul of substantial compliance with ERISA’s procedural review requirements, our precedent identifies another. Even in absence of a *661 bait-and-switch, an ERISA administrator does not meet the standard of “substantial compliance” with the requirements of § 1133 where the initial notice of termination relies on one ground for termination, and additional grounds are provided and relied upon on appeal. Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 155-56 (5th Cir.2009); see also McCartha v. Nat’l City Corp., 419 F.3d 437, 446 (6th Cir.2005).
In summarizing its reasons for affirming the initial decision to terminate benefits, VPA unmistakably characterized its decision as one based primarily, if not exclusively, on Cooper’s employment:
It is your contention Ms. Cooper is Totally Disabled for any occupation. In fact, Ms. Cooper is employed for another employer. She is performing the job of a Sales Clerk for Ben Bridge Jeweler, Inc. and has been doing so since the end of March 2006. As a result, Ms. Cooper does not meet the any occupation definition of disability noted above. We are therefore, reaffirming the termination of benefits effective March 25, 2006.
(emphasis added). Cooper’s employment was again singled-out as the reason for decision in VPA manager’s review following the receipt of Dr. Keichian’s requested addendum containing medical evidence that Cooper was totally disabled. Instead of relying on the new medical information, the VPA manager’s review again affirmed the decision based on Cooper’s employment: “[Dr. Keichian] has indicated ‘in view of her medical pathology, Ms. Cooper is totally disabled and unable to be gainfully employed.’ While this is his opinion, the fact remains that [Cooper] is in fact working and therefor does not meet the ... definition of disability under the Plan. My reaffirm stands.” At a minimum, these conclusory statements dispel any notion that Cooper’s employment was something less than a free-standing reason for VPA’s decision.
These statements establish that Cooper’s employment was a separate basis, if not the only basis, for VPA’s decision on appeal. The majority’s opinion attempts to brush off VPA’s reliance on Cooper’s employment as an irrelevant “mention of [a] new fact,” as if the mention of Cooper’s employment consisted of some single insignificant phrase, buried somewhere in a thorough analysis of medical evidence. The review letter’s focus on the consequences of Cooper’s jewelry store employment, detached from any analysis of the medical evidence, and the manager review’s express reliance upon Cooper’s employment dispel any such notion. As such, our established precedent prevents a finding of substantial compliance. See Lafleur, 563 F.3d at 156 (“[Defendants were not in substantial compliance with the requirements of § 1133 because McCartha was never timely informed that the failure to provide current medical opinions as to her long-term disability would be one of the bases for the termination of her benefits.” (quoting McCartha, 419 F.3d at 446)).
WTiere a plan administrator “fails to substantially comply with the procedural requirements of ERISA,” as VPA failed to do in this case, “[r]emand to the plan administrator for full and fair review is usually the appropriate remedy.” Id. at 157. It is true that remand is unnecessary where it would amount to no more than a “useless formality,” but this futility exception is “narrowly construed and sparingly applied,” as an “administrator’s failure to substantially comply with the procedural requirements of ERISA will usually prevent a plaintiff from adequately developing the administrative record and presenting his arguments.”[6] Id. at 158 n. 22. Here, *662 no one can contend seriously that remand would be futile. Cooper was unaware that her jewelry store employment would be the basis of her benefit termination on appeal, and this lack of notice denied her the opportunity to present these arguments and include information about the jewelry store job in the administrative record. Therefore, she has yet to receive the “full and fair” review which ERISA guarantees her by right. Accordingly, I would vacate the district court’s decision and remand the case to the plan administrator to be reviewed in compliance with the procedural requirements of ERISA. I express no view as to what the ultimate outcome on the merits ought to be.
I respectfully dissent.
[[Image here]]
VPA. INC. / P.O. BOX 9830 / CALABASAS. CA 91372-0830 I TEL: (800) 599-7790/ FAX: (8 1 83 591-755-1
Visit us on the Internet at «w. VPAinc.com
APPENDIX
May 16, 2007
Bernis, Roach & Reed 4100 Duval Rd, Biding 1, Ste 200 Austin, TX 78759
Re: Laurie Cooper
HewletNPackard Company — LTD Claim#: 600224
Dear Mr. Reed:
We have made a careful review of Ms. Cooper’s claim and appeal of the decision to terminate benefits under her employer’s Long Term Disability Plan for the period of March 25, 2006 and continuing.
The Hewlett-Packard Company Plan defines Total Disability following the initial 24-months as:
“(q) “Totally Disabled” and “Total Disability” mean the because of injury or sickness:
(iii) Following the initial twenty-four (24) month period after onset of the injury or sickness, the Participant is continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience.”
In addition, the Plan states:
“With respect to any Total Disability caused or contributed to by mental illness or alcohol or drug abuse, the following limitations shall apply:
(A) Mental Illness
During the period described in (iii) above, nervous or mental disorders shall be disregarded in the determination of Total Disability. An illness shall be considered a nervous or mental disorder if:
(1) The illness has psychological or behavioral manifestations or results in impairment or mental functioning due to any causes including, but not limited to, social, psychological, genetic, *663 physical, chemical or biological; and
(2) The illness a primary diagnosis that either is listed in the American psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Revised (or the successor thereto), or falls within diagnostic codes 290 through 319 in the International Classification of Diseases, 9th Revision (or the successor thereto).
The limitations of this paragraph (A) shall not apply to a Total Disability due to Alzheimer’s disease, multiple sclerosis, amyotrophic lateral sclerosis, traumatic brain injuries, schizophrenia, or other organic, degenerative, progressive diseases as determined by the Claims Administrator.”
The Plan further states under Section 5.(c), Duration of Benefit:
“A Participant who is receiving the benefit under this Section 5 shall continue to do so until the earliest of the following dates:
(iv) The date the Participant becomes self-employed or the employee of another employer without previously having given written notice of such employment to the Claims Administrator and receiving approval pursuant to Section 5(i).”
The information in file documents Ms. Cooper was claiming Total Disability as a result of cervical spinal stenosis, status post laminectomy and fusion, status post resection or the right retoperitoneal paraganglioma, status post left carpel tunnel release, status post radiofrequency ablation of right L2 to SI median branch nerves. There is also documentation that Ms. Cooper suffers from chronic depression, bipolar disorder, and anxiety. The chronic depression, bipolar disorder and anxiety all fall under the 24-month Plan limitation for mental/nervous conditions and cannot be taken into consideration for determining Total Disability after the initial 24-months.
The initial 24-month period for Ms. Cooper’s claim ended on March 24, 2006, with the above definition of disability, limitations and restrictions applying to the claim effective March 25, 2006. It is on this date the Ms. Cooper must establish she met the above definition of disability for a condition not limited to the initial 24-month period by the Plan.
Medical records from Anderson Cancer Center dated January 9, 2006 document Ms. Cooper underwent radiofrequency ablation of the median branch from L2 to SI, right side, on October 12, 2005. She again had radiofrequency ablation of the median branches from LI through 15, including the sacral ala and SI, on October 20, 2005. During the office examination, Ms. Cooper reported that her symptoms were much better. She reported a decrease in medications, starting an exercise regimen, and was looking for a job. She ranked her pain at 2/10.
In your letter of appeal, you asked that we clarify information with the IME physician, Dr. Keichian. Your request to clarify information was forwarded to Dr. Keiehian. To date, despite follow-ups, we have not had a response.
As you are aware, Ms. Cooper’s claim and appeal are being reviewed based on the definition of Total Disability noted above. Ms. Cooper must be Totally Disabled for any occupation for which, she is or may become qualified by reason of his education, training or experience. We noted in the medical records from Anderson Cancer Center that Ms. Cooper was employed at Ben Bridge Jewelers, Inc. As requested, you furnished our office with copies of her pay stubs from her employ *664 ment. The pay stubs in file document Ms. Cooper has been employed with Ben Bridge Jeweler, Inc. beginning with the pay period that ended April 1, 2006, with the most recent pay stub provided covering payroll through the pay period ending February 18, 2007. Although this position has been represented as part-time, many of the pay period provided represent full-time hours, and often exceed full-time hours.
The Provision noted above documents benefits will end at the point the employee fails to request advance written approval for self-employment or employment with another employer. Ms. Cooper never made us aware of her employment.
It is your contention Ms. Cooper is Totally Disabled for any occupation. In fact, Ms. Cooper is employed for another employer. She is performing the job of a Sales Clerk for Ben Bridge Jeweler, Inc. and has been doing so since the end of March 2006. As a result, Ms. Cooper does not meet the any occupation definition of disability noted above. We are therefore, reaffirming the termination of benefits effective March 25, 2006.
This decision is the Claim Administrator’s final decision. You have the right to bring a civil action under ERISA 502(a). You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.
We regret that our response could not have been more favorable.
Should you have any questions, please feel free to contact our office at (800)599-7790.
Sincerely,
/&/ Janet Curry
Janet Curry Appeals Manager
cc: Hewlett Packard Company

. Further, 29 C.F.R. § 2560.503-l(g) requires that an ERISA claim denial letter
“set forth in a manner calculated to be understood by the claimant- — (i) [t]he specific reason or reasons for the adverse determination, (ii) [r]eference to the specific plan provisions on which the decision is based, (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.”

. See Schadler v. Anthem Life Ins., 147 F.3d 388, 394 (5th Cir.1998) (explaining that a plan administrator must "disclose the basis for its decision” so "beneficiaries can adequately prepare for any further administrative review.”(internal quotation marks omitted)); accord Robinson, 443 F.3d at 393 ("[Effective review requires ‘a clear and precise understanding of the grounds for the administrator's position.’ ”) (quoting Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771 (7th Cir.2003)).

. The letter is attached as an Appendix.

. There is no indication in the review letter that VPA intended to cast Cooper's employment as supporting evidence of its earlier determination that her health had improved to the point that she was not "Totally Disabled.” Even if her employment could logically be considered support for VPA's original decision regarding the medical evidence concerning Cooper's health status, we may not affirm based on the adequacy of a correlation that VPA did not actually make. When we are judging the procedural adequacy of a review of a benefit termination under ERISA, we determine whether the affirmation was based on a review of the original “specific reason” given for termination. See Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 155-56 (5th Cir.2009).

. Dr. Keichian provided the medical evidence about Cooper's limitations and restrictions which the vocational specialist then used in concluding that Cooper could perform certain skilled jobs, which were noted in the initial termination letter. In the months following Dr. Keichian’s initial report, during which time Cooper alleges that her health deteriorated, Cooper sought an addendum to Dr. Keichian's report. After the appeal, VPA received Dr. Keichian's addendum, which concluded that she was unable to work due to her medical impairments, but the appeals manager affirmed the decision on the ground that "Cooper is in fact working.”

. Our circuit gives the “useless formality” exception a narrower interpretation than the Sixth Circuit. Compare Lafleur, 563 F.3d at *662 158 n. 22 (noting that the exception is appropriate only in rare circumstances, such as when "much or all" of the evidence supports a finding that the plaintiff is not covered under the policy’s terms, or when the plaintiff dies and submitting new evidence is impossible), with McCartha, 419 F.3d at 445 (6th Cir.2005) (holding that remand is a "useless formality” where the plan administrator provides one reasonable basis for denying benefits, even if another reason is given for denying the claim of which the petitioner was previously unaware).