# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20576

United States Court of Appeals
Fifth Circuit

**FILED**

July 29, 2015

Lyle W. Cayce
Clerk

REBECCA HAMSHER,

Plaintiff - Appellant

v.

NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY,
LIMITED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1401

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:*

In this ERISA case, we must decide whether the plaintiff's medical expenses were incurred at a "hospital." Concluding that the administrative record does not support the insurer's determination that they were, we reverse.

---

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20576

I.

A.

North Cypress Medical Center provides health insurance to its employees through its self-funded Employee Benefit Plan (the "Plan"). As with many insurers, North Cypress must pre-approve certain medical treatments. If pre-approval is required, but not received, North Cypress may reduce its payment to its beneficiaries, or deny reimbursement altogether.

The Plan has two types of pre-approval. The first is called "precertification," and it applies to all "hospitalizations" and "inpatient mental disorder/substance use disorder treatments."[1] To precertify, the covered person or a family member must contact North Cypress's medical management subcontractor, Meritain Health Medical Management, at least 48 hours before treatment is to begin.[2] Meritain will then determine how many days of treatment are medically necessary. That said, a failure to precertify is not an absolute bar to reimbursement. "If a Covered Person does not obtain precertification, as required for certain benefits under the Plan, eligible expenses will be reduced by $500."

The second type of pre-approval is more stringent, and is called "prior-authorization" (although it is sometimes referred to in the briefing as "pre-authorization"). Prior-authorization is an absolute precondition to reimbursement; North Cypress will not pay for certain services unless the "service or specialty is not available at [North Cypress] *and* prior authorization

---

[1] A "Mental Disorder" is defined by the Plan as "any disease or condition, regardless of whether the cause is organic, that is classified as a Mental Disorder in the current edition of the International Classification of Diseases, published by U.S. Health and Human Services." Outpatient and emergency mental disorder and substance use disorder treatments do not require precertification.

[2] If there is a medical emergency, the covered person or a family member must contact Meritain "within 48 hours of the first business day after admission."

## No. 14-20576

has been obtained from [North Cypress] Human Resources Department." As is relevant here, both inpatient and outpatient hospital services must be prior-authorized. And the Plan defines "[h]ospital" to include "[a] facility operating legally as a psychiatric [h]ospital or residential treatment facility for mental health and licensed as such by the state in which the facility operates."[3]

### B.

Rebecca Hamsher was employed by North Cypress as a nurse and was insured through its Plan. In May 2011, she was admitted to Timberline Knolls Residential Treatment Center ("Timberline") in Illinois, where she was diagnosed with various mental disorders. She was treated at Timberline through December 2011, although the administrative record is not clear as to the nature of her treatment. What is clear, however, is that North Cypress did not precertify or prior-authorize her medical treatment.

---

[3] The Plan's full definition is:

**Hospital** is an institution which is engaged primarily in providing medical care and treatment of sick and injured persons on an inpatient basis at the patient's expense and which fully meets these requirements: it is accredited as a Hospital by the Joint Commission on Accreditation of Healthcare Organizations or the American Osteopathic Association Healthcare Facilities Accreditation Program; it is approved by Medicare as a Hospital; it maintains diagnostic and therapeutic facilities on the premises for surgical and medical diagnosis and treatment of sick and injured persons by or under the supervision of a staff of Physicians; it continuously provides on the premises 24-hour-a-day nursing services by or under the supervision of registered nurses (R.N.s); and it is operated continuously with organized facilities for operative surgery on the premises.

"Hospital" also includes:

(1) A facility operating legally as a psychiatric Hospital or residential treatment facility for mental health and licenses as such by the state in which the facility operates.

(2) A facility operating primarily for the treatment of Substance Use Disorder if it meets these requirements: maintains permanent and full-time facilities for bed care and full-time confinement of at least 15 resident patients; has a Physician in regular attendance; continuously provides 24-hour a day nursing service by a registered nurse (R.N.); has a full-time psychiatrist or psychologist on staff; and is primarily engaged in providing diagnostic and therapeutic services and facilities for treatment of Substance Use Disorder.

No. 14-20576

North Cypress refused to pay.[4]  Hamsher internally appealed in January 2012, and North Cypress again denied her claim.  It concluded that "based on evidence in the administrative record showing that [she] failed to obtain the necessary prior authorization," she "was not eligible to receive benefits."[5]

Unsatisfied, Hamsher filed suit against North Cypress in federal district court, seeking "to recover benefits due to [her] under the terms of [her] plan," as provided by the Employee Retirement Income Security Act ("ERISA").[6] North Cypress moved for summary judgment.  Shortly after, Hamsher moved to supplement the administrative record, which the district court denied.  The court also granted North Cypress's summary judgment motion.  In a brief order, it concluded that Hamsher was required to get prior-authorization for her treatment at Timberline, and since she conceded she had failed to do so, North Cypress was entitled to deny her claim.

This timely appeal of the district court's orders granting summary judgment and denying Hamsher's motion to supplement the administrative record follows.

## II.

## A.

"Standard summary judgment rules control in ERISA cases."[7]  We review the district court's grant of summary judgment de novo, applying the

---

[4] While the administrative appeal was pending, Hamsher paid Timberline all amounts due.

[5] "[T]he administrative record reviewed consisted only of the following information: (a) the Plan documents; (b) UB-04 and UB-97 claim forms provided by Timberline Knolls Residential Treatment Center ('Timberline Knolls'); and, (c) written confirmation of a request for prior authorization, *if any*, *via* e-mail from . . . the Director of Human Resources at North Cypress."

[6] 29 U.S.C. § 1132(a)(1)(B).

[7] *Green* v. *Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Cooper* v. *Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009)).

same standards as the district court.[8] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]

We review "an administrator's factual determinations in the course of a benefits review," as at issue here, for abuse of discretion.[10] This standard is far from demanding.

> Abuse of discretion review is synonymous with arbitrary and capricious review in the ERISA context. When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.[11]

"A plan administrator abuses its discretion where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'"[12]

B.

North Cypress denied Hamsher's claim because it concluded that she had neither asked for nor received prior-authorization for "hospital expenses incurred at hospitals other than North Cypress." Under the terms of the Plan, North Cypress's denial was proper if Hamsher's expenses were incurred at a

---

[8] *Wilson* v. *Tregre*, 787 F.3d 322, 324-25 (5th Cir. 2015).

[9] Fed. R. Civ. P. 56(a).

[10] *Dutka ex rel. Estate of T.M.* v. *AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009).

[11] *Cooper* v. *Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009) (internal citations and quotation marks omitted); *see also Holland* v. *Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) ("Our 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end.'"(quoting *Corry* v. *Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

[12] *Holland*, 576 F.3d at 246 (quoting *Lain* v. *UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002)).

hospital, a category which explicitly includes a "residential treatment facility for mental health and licensed as such by the state in which the facility operates." If, however, Hamsher received "mental health . . . treatment" at a non-hospital facility, prior-authorization was not required, and she is entitled to at least partial reimbursement.[13]

The problem is that the administrative record is essentially silent as to the nature of Hamsher's treatment. We know that she was treated for various mental disorders at a facility called "Timberline Knolls Residential Treatment Center," but the record says nothing about whether this facility is a "residential treatment facility for mental health and licensed as such by the state [of Illinois]." Rather, the administrative file contains only claim forms, none of which provide an indication as to whether Timberline is a "hospital" as defined under the Plan. The name is suggestive, of course, but title alone does not constitute the type of "substantial evidence" that North Cypress must put forward.

This conclusion accords with our precedent. In *Barnham* v. *Ry-Ron Inc.*, for example, an insurer denied coverage for an experimental cancer treatment, citing a plan exclusion for experimental or investigational procedures.[14] The patient filed suit, and the insurer moved for summary judgment. It did so without developing the record; "[t]he only evidence put forth by the Plan in support of its position that the . . . treatment is experimental is an affidavit of the claims manager."[15] We held that this evidence was not enough to "sufficiently demonstrate the plan administrator's

---

[13] Under any circumstances, the Plan specifies that Hamsher can only be reimbursed for "medically necessary" services, however, North Cypress does not contest the medical necessity of her treatment.

[14] 121 F.3d 198, 200 (5th Cir. 1997).

[15] *Id.* at 202.

entitlement to summary judgment."[16]  Here, by contrast, we lack even an affidavit indicating that Timberline was an Illinois-licensed residential treatment facility.[17]

The administrative record cannot support North Cypress's conclusion that Hamsher was treated at a "hospital."  Its denial of her claim – and summary judgment in its favor – was improper.[18]

C.

The only remaining question is of remedy.  "Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA."[19]  Our practice is different where, as here, the administrator's denial is "not supported by concrete evidence in the record."[20]  There, we have held that "granting summary judgment for the plaintiff is appropriate,"[21] even if the plaintiff had not moved for summary judgment.[22]

In *Vega* v. *National Life Insurance Services*, our en banc court explained the basis for this rule:

---

[16] *Id.*

[17] Nor is there any evidence in the record that Timberline satisfied any of the Plan's other definitions of "hospital."  *See* R. 371.

[18] Given our holding, we need not reach the question of whether the district court erred in denying Hamsher's motion to supplement the administrative record.

[19] *Rossi* v. *Precision Drilling Oilfield Servs. Corp. Empl. Benefits Plan*, 704 F.3d 362, 368 (5th Cir. 2013) (quoting *Lafleur* v. *La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009)).

[20] *Id.*

[21] *Id.*; *see also Robinson* v. *Aetna Life Ins. Co.*, 443 F.3d 389, 396-97 (5th Cir. 2006) (granting summary judgment to the plaintiff because "no evidence in the administrative record" supported denying the plaintiff's claim); *Vega* v. *Nat'l Life Ins. Servs.*, 188 F.3d 287, 302 (5th Cir. 1999) (en banc) ("If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim and attorneys' fees."), *overruled on other grounds by Metro Life Ins. Co.* v. *Glenn*, 554 U.S. 105 (2008).

[22] *See Robinson*, 443 F.3d at 396-97.

No. 14-20576

We want to encourage each of the parties to make its record before the case comes to federal court, and to allow the administrator another opportunity to make a record discourages this effort. Second, allowing the case to oscillate between the courts and the administrative process prolongs a relatively small matter that, in the interest of both parties, should be quickly decided. Finally, we have made plain in this opinion that the claimant only has an opportunity to make his record before he files suit in federal court, it would be unfair to allow the administrator greater opportunity at making a record than the claimant enjoys.[23]

North Cypress had its chance to create a record showing that Hamsher received services at a "[h]ospital." It simply failed to do so.

### III.

We REVERSE the judgment of the district court and REMAND for the entry of judgment in favor of Hamsher.

---

[23] *Vega*, 188 F.3d at 302 n.13.

8