# United States Court of Appeals for the Fifth Circuit

————————

No. 23-50862

————————

United States Court of Appeals
Fifth Circuit

**FILED**
November 6, 2024

Lyle W. Cayce
Clerk

Jerry Clayton Gift,

*Plaintiff—Appellant*,

*versus*

Anadarko Petroleum Corporation Change of Control Severance Plan; Occidental Petroleum Corporation; Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CV-122

————————————————————

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:*

Jerry Clayton Gift appeals the denial of his claim for benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). His claim involves his former employer Anadarko Petroleum Corporation's ("Anadarko") Change of Control Severance Plan ("Plan"). Under the Plan,

————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50862

if an acquisition or change of control occurs, employees have a window to resign for "Good Reason" and receive severance. In 2019, Occidental Petroleum Corporation ("Occidental") acquired Anadarko. Gift claims he was subsequently assigned to the task of procedure writing and covering shifts in the Operations Control Center ("OCC"), which he believes he lacked the training and experience to do. Gift inquired whether his circumstances qualified under the Plan. The Plan's Committee responded in the negative. Then, Gift resigned and submitted a formal claim for benefits. The Committee considered and denied his claim. Gift appealed that determination, but the Committee again rejected his claim. Subsequently, Gift sued the Plan, Committee, and Occidental, alleging a denial of benefits under ERISA. Defendants moved for summary judgment. The district court granted that motion. We AFFIRM.

## I.

We review a grant of summary judgment de novo, applying the same standards as the district court. *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010). We may affirm the district court's grant of summary judgment "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled to judgment as a matter of law." *U.S. ex. rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011); *see LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 840–41 (5th Cir. 2013). "'Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law' that we review de novo." *Green v. Life Ins. Co. of Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 269 (5th Cir. 2004)).

## A.

First, Gift does not challenge whether the Plan's interpretation was legally correct, nor does he contend that that the district court erred in finding that it was legally correct. He instead challenges the standard of review the district court used in analyzing the Plan's denial of his claim.

"Our standard of review is complex but clear." *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 95 F.4th 964, 970 (5th Cir. 2024). Where, as here, "the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms, we review a decision to deny benefits only for abuse of discretion." *Green*, 754 F.3d at 329 (citing *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012)). "A plan administrator abuses its discretion 'without some concrete evidence in the administrative record that supports the denial of the claim.'" *Cloud*, 95 F.4th at 971 (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)). Abuse of discretion factors include: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).

Here, Gift acknowledges that the "[P]lan expressly confers discretion on the plan administrator to construe the plan's terms." Because the Plan confers "discretionary authority," the district court correctly noted that abuse of discretion rather than de novo review applies.

## B.

Second, Gift appears to argue that the Committee's interpretation of "Good Reason" was not a correct reading of the Plan in light of the record.

Gift alleges that his assignment to take on procedure writing and to cover shifts in the OCC, which he was not trained to do, constitutes a "Good Reason" under the Plan.

Our review of the interpretation of an ERISA benefits plan is limited to the administrative record. *See LifeCare Mgmt. Servs. LLC*, 703 F.3d at 841 (citing *Vega*, 188 F.3d at 299; *Est. of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 (5th Cir. 2000)). "In evaluating the record to determine whether the interpretation of a plan is 'legally correct,' we consider: '(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.'" *Id.* (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)). "Whether the administrator gave the plan a fair reading is the most important factor." *Id.* (citation and internal quotation marks omitted). "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the 'plain meaning of the plan language.'" *Id.* (quoting *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)); *see also Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252 (5th Cir. 2009).

"If this court finds that an administrator's interpretation of a plan is incorrect, then we consider whether the interpretation was an abuse of discretion." *LifeCare Mgmt. Servs. LLC*, 703 F.3d at 841 (citing *Chacko v. Sabre, Inc.*, 473 F.3d 604, 611 (5th Cir. 2006); *Crowell*, 541 F.3d at 312).

The district court correctly explained that it must first determine whether the administrator's interpretation is legally correct; if so, the inquiry ends because no abuse of discretion could have occurred. *See Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478 (5th Cir. 2017). Moreover, this case is an interpretive dispute rather than a factual one

because the parties dispute the Plan's meaning of "Good Reason." Indeed, despite purporting to challenge the Committee's factual determinations, the crux of Gift's argument is that the Plan's Section 2(s)(vi)'s "for which he or she is not skilled or trained" language, along with the Plan's interpretive guidance, required an "individualized assessment of skill and training." Gift attempts to style his arguments as factual disputes, but at no point does he suggest the Plan's interpretation was not legally incorrect. Thus, the district court was not obligated to move to the second step of the analysis.[1] *See Conn. Gen. Life Ins. Co.*, 878 F.3d at 483.

In this case, the Plan states that a "Good Reason" occurs if the "Participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained." The Committee determined that because Gift's work in the OCC was voluntary, it did not constitute a "Good Reason" event under Section 2(s)(vi). The Committee reached this conclusion after reviewing Gift's materials and speaking with individuals familiar with the Gift's position. The Committee also rejected Gift's argument on appeal that he suffered a "Good Reason" event because he was not trained to work in the OCC, finding that Gift had the requisite knowledge and understanding of Operations to work in the OCC, and no additional training was required.

---

[1] Gift further avers that the district court's opinion lacks "the words concrete, substantial evidence, or 'rational connection,'" and he suggests that these "magic" words are required as part of the court's abuse-of-discretion review. Even assuming *arguendo* that the district court erred in failing to reach the second step of the analysis, Gift fails to cite any authority mandating that the court must use these "magic" words to correctly apply the standard. Because Gift does not challenge whether the Plan's interpretation was legally correct, we need not reach this issue. Nor do we reach Gift's more attenuated argument as to the substantial-evidence standard.

The district court found that the Committee's plan interpretation was "legally correct," and Gift does not dispute that. Nonetheless, construing Gift's challenge "[i]n the most charitable light" as one to whether the Committee gave the Plan a fair reading, we understand Gift to argue that (1) the Committee must make an "individualized assessment" when determining whether there is a need for skill and training, and (2) the Plan's guidance requires training for new job duties.

As the district court explained, Gift has not offered reasoning for his arguments. Rather, he focuses on the abuse of discretion standard. As to that standard, he argues there was no concrete evidence to support a denial of benefits, there was no rational connection between the facts and decision, and there was no consideration of industry terminology and practices. Importantly, Gift has not identified evidence in the administrative record challenging the Committee's "main conclusion" that Gift's work in the OCC was voluntary. Nor does he dispute that the Committee's denial of his claim was "legally correct." Furthermore, although Gift asserted that the "individualized assessment" purportedly required by the Plan did not consider generic job titles or descriptions, the Committee did not base its decision on such titles or descriptors. Thus, we agree with the district court that Gift's allegations do not raise a material fact dispute and the Committee's determination was legally correct.

## C.

Third, Gift avers that he was not afforded a full and fair review because the Committee initially denied his claim on the ground that coverage duty was voluntary, but it changed its reasoning in the final denial letter and determined training was not required to work in the OCC.

We consider challenges to ERISA procedures under "the substantial compliance standard." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir.

2006). "Substantial compliance requires meaningful dialogue between the beneficiary and administrator." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009) (internal citations and quotation marks omitted).

ERISA provides that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review" of that denial decision. 29 U.S.C. § 1133(2). Section 1133 contains two subsections, which this court "has previously read . . . as complementing each other." *Robinson*, 443 F.3d at 393. Thus, Section 1133 requires (1) a claimant to be notified of the "specific reasons" for the denial of his claim suggests that the review under subsection (2) must be of "those 'specific reasons' rather than the termination of benefits generally." *Id.* Accordingly, a plan administrator cannot "use[] a 'bait-and-switch' tactic, providing one justification at the first stage and then, during the review, changing the grounds for the denial." *See Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 311 (5th Cir. 2015) (citations omitted).

Gift suggests that Defendants used a bait-and-switch tactic. As Defendants note, however, this is not a "bait-and-switch" case because the Committee providing additional reasoning to address Gift's arguments is not the same as switching its reasoning.

For example, in *Robinson*, "Aetna's shifting justification for its decision and failure to identify its vocational expert meant that Robinson was unable to challenge Aetna's information or to obtain meaningful review of the reason his benefits were terminated." *Robinson*, 443 F.3d at 394. An administrator must provide specific reasons for the denial of benefits and cannot justify the denial on different grounds. *See, e.g.*, *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 367–68 (5th Cir. 2013) ("The Plan did not substantially comply with the 'full and fair

review' requirement because it relied on an entirely different ground for denial on administrative appeal.'").

Here, unlike *Robinson*, the Committee provided additional reasoning in the Final Appeal Letter to respond to Gift's training-and-experience argument, but it never strayed from its earlier basis that OCC coverage was voluntary.[2] As the district court explained, the Plan's denial letter reiterated the Committee's previous reason for denying Gift's claim. Though the Committee went on to hypothetically engage with Gift's training and experience arguments, it did so to thoroughly address all of Gift's arguments, including those raised in his appeal. This was apparent from the Plan's denial letter in the administrative record, which stated that "even if [Gift] were required to work in the OCC (instead of it being optional), [Gift] had the requisite knowledge and understanding . . . , and no additional training was required." Thus, reading the denial letter as a whole and in context, the Committee substantially complied with ERISA's procedural requirements. Accordingly, the record does not establish that Gift was deprived of a full and fair review.

## III.

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.

---

[2] *See Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 653–54 (5th Cir. 2009) (finding plaintiff's reliance on *Robinson* "misplaced" where "[plan administrator] did not change the analysis at hand to conclude that the original basis for denying [plaintiff's] claim had become superfluous, but instead, . . . observed that th[e] new evidence merely support[ed] the [plan administrator's] conclusion that the original assessment of the medical and vocational evidence on record is correct").